UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JESUS FERREIRA,

         Plaintiff

     v.

CITY OF BINGHAMTON, BINGHAMTON
POLICE DEPARTMENT, and POLICE OFFICER
KEVIN MILLER,

        Defendants.

**Docket Number: 3:13-cv-00107-TJM-TAB**

**PLAINTIFF'S PROPOSED REQUEST TO CHARGE**

Pursuant to the directive of this Honorable Court, Plaintiff has omitted "boilerplate" charges that we assume will be charged, and reserves the right to object to inappropriate charges, and to supplement this request to charge. In an abundance of caution, certain routine charges have been included.

## TABLE OF CONTENTS

Burden of Proof—Preponderance of Evidence ……………………………………….. 1
Direct and Circumstantial Evidence …………………………………………………… 2
Credibility of Witnesses ………………………………………………………………… 3
Bias of Witness ………………………………………………………………………….. 4
Expert Testimony - Bias of Expert ……………………………………………………... 4
Municipal Employee Witnesses ……………………………………………………….. 5
Police Officer and Civilian Witnesses ………………………………………………….. 5
Police Officer Witness ………………………………………………………………….. 5
Police Officer Witness – Bias ………………………………………………………….... 6
Action by Private Citizen against Police Officers—All Persons Stand Equal Before the Law …………………………………………………………………………………….. 6
Action against Governmental Agency ………………………………………………….. 6
Lawyer's Statements Not Evidence …………………………………………………….... 6
Negligence ……………………………………………………………………………….. 7
    Liability for the Conduct of Another: Employer-Employee ………………….. 7
        Scope of Employment …………………………………………………... 7
        Prohibited Act …………………………………………………………… 8
        Willful Tort ……………………………………………………………... 8
    Negligent Use of a Firearm …………………………………………………... 9
    Standards of Care ……………………………………………………………. 9
    Summary ……………………………………………………………….. 10
    Proximate Cause- In General …………………………………………………… 11

Proximate Cause- Concurrent Causes ………………………………………... 11
False Arrest …………………………………………………………………... 11
False Imprisonment …………………………………………………………… 13
Assault ………………………………………………………………………... 13
Battery ………………………………………………………………………... 15
Battery Committed in Performance of Public Duty or Authority …………………… 17
Civil Rights …………………………………………………………………... 19
    The Statute and Its Function …………………………………………… 19
    Seizure/Arrest ………………………………………………………… 20
    Excessive Force ………………………………………………………. 21
    Police Cover-Up of Police Misconduct in Deadly Force Cases – Right of
    Access to Courts …………………………………………………… 24
    Claims against Officer Who Used Force and Against Liability of On-
    Looking Officer Who Failed to Intervene …………………………………… 25
Cautionary Instruction on Damages …………………………………………….. 27
Indemnification of Compensatory Damages …………………………………….. 27
Cautionary Instruction Concerning Counsel's Request for Damages ………………... 28
Nominal Damages …………………………………………………………….. 28
Compensatory Damages - General Principles - Past and Future Damages …………. 28
    Damages Accrued …………………………………………………… 30
    Calculation of Future Damages ………………………………………… 31
Punitive Damages …………………………………………………………….. 32
    Amount of Punitive Damages ………………………………………….. 34
    Indemnification of Punitive Damages …………………………………….. 35

## BURDEN OF PROOF—PREPONDERANCE OF EVIDENCE

At various times in these instructions I will use the term "burden of proof" in order to inform you which party has the burden of proof on a particular claim or a particular issue.

The party who has the burden of proof on a particular issue has the burden of establishing his position on that issue by a preponderance of the evidence. If you conclude that the party who has the burden of proof on an issue has failed to establish his position by a preponderance of the evidence, you must decide against that party on that issue.

What does "preponderance of evidence" mean? A fact is established by a preponderance of the evidence when it is shown that the fact is more likely true than not true. You are to determine whether a fact is established by a preponderance of the evidence on the basis of the quality and persuasiveness of the evidence, not on the basis of the number of witnesses or exhibits. In determining whether a fact has been proved by a preponderance of the evidence, you should consider all of the relevant evidence. You should consider the relevant testimony of the witnesses, regardless of which party may have called them, and the relevant exhibits received in evidence, regardless of which party may have introduced them.

What if you find that the credible evidence of a particular fact is evenly divided between the parties, that it is equally probable that one side is right as it is that the other side is right? In that case you must decide that issue against the party who has the burden of proof. This is because the party who bears the burden of proof must establish more than equality of evidence; she must prove the fact at issue by a preponderance of the evidence. On the other hand, the party with the burden of proof is not required to prove more than a preponderance. As long as you find that the balance tips, however slightly, in favor of the party with the burden of proof, so that the fact is more likely true than not true, that fact will have been proved by a preponderance of

evidence.

You may have heard the phrase proof beyond a reasonable doubt. This is the standard of proof required in a criminal trial. That requirement does NOT apply in a civil case such as this.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

I told you that evidence comes in various forms such as the sworn testimony of witnesses, exhibits, and stipulations. In addition, there are two different kinds of evidence—direct evidence and circumstantial evidence.

Direct evidence can prove a material fact by itself. It doesn't require any other evidence. It doesn't require you to draw any inferences. A witness's testimony is direct evidence when the witness testifies to what she saw, heard, or felt. In other words, when a witness testifies about what is known from her own personal knowledge by virtue of her own senses, what she sees, touches, or hears—that is direct evidence. The only question is whether you believe the witness's testimony. A document or physical object may also be direct evidence when it can prove a relevant fact by itself, without any other evidence or inference. You may, of course, have to determine the genuineness of the document or object.

Circumstantial evidence is the opposite of direct evidence. It cannot prove a material fact by itself. Rather, it is evidence that tends to prove a material fact when considered together with other evidence and by drawing inferences.

There is a simple example of circumstantial evidence which is often used in the federal courts. Assume that when you got up this morning it was a nice, sunny day. But when you looked around you noticed that the streets and sidewalks were very wet. You had no direct evidence that it rained during the night. But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to infer that it had rained during the night.

Not all circumstantial evidence presents such a clear compelling inference; the strength of the inferences arising from circumstantial evidence is for you to determine. It is for you to decide how much weight to give to any evidence.

Inference from circumstantial evidence may be drawn on the basis of reason, experience, and common sense. Inferences may not, however, be drawn by guesswork, speculation, or conjecture.

The law does not require a party to introduce direct evidence. A party may prove a fact based entirely on circumstantial evidence, or upon a combination of direct and circumstantial evidence. Circumstantial evidence is not less valuable than direct evidence. The law makes no distinction between direct and circumstantial evidence. You are to consider all of the evidence in the case, both direct and circumstantial, in determining what the facts are, and in arriving at your verdict.

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. It is solely for you, the jury, to determine the credibility of a witness's testimony. Credibility means the believability of a witness's testimony. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. The opportunity and ability of the witness to see or hear and/or know the thing testified to;
2. The witness' memory;
3. The witness' manner-while testifying;
4. The witness' interest in the outcome of the case and any bias or prejudice she may have.
5. Whether other evidence contradicted the witness' testimony;
6. The reasonableness of the witness' testimony in light of all the evidence; and
7. Any other factors that bear on believability.

3

## BIAS OF WITNESS

In deciding whether to believe a witness, you should consider any evidence of the witness's bias, or any interest or motive that the witness may have in favor or against a particular party. You should also take into account any evidence that a witness may benefit in some way from the outcome of the case.

It is your duty to consider whether the witness has permitted any bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness has some bias, or some interest in the outcome of the "case, does not mean he or she has not told the truth. It is for you, the jury, to decide from your observations, and applying your common sense and experience, whether the possible interest of any witness, or of any party, has colored or distorted his or her testimony. You are not required to disbelieve an interested witness. You may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy, of acceptance.

## EXPERT TESTIMONY—BIAS OF EXPERT[1]

When knowledge of technical subject matter may be helpful to the jury, an expert witness, a person who has special knowledge, skill, training, or experience in a technical field, is permitted to state his opinion on matters relating to his field of expertise. However, you are not required to accept an expert's opinion or his other testimony. As with any other witness, it is up to you to decide whether to rely upon it and, if you do rely upon it, how much weight to give it.

In deciding whether to accept the testimony of an expert witness, you may consider whether the facts relied upon by the expert in forming his opinion are supported by the evidence,

---

[1] Only if Dr. Lyness is permitted to testify.

4

the expert's qualifications, and all of the other evidence in the case. You may also consider any

bias of the expert witness, including any bias you may infer from evidence that the expert

witness has been or will be paid for reviewing the case and testifying, or from evidence that he

testifies regularly as an expert witness for one side of the litigation, and that his income from

such testimony represents a significant portion of his income.

### MUNICIPAL EMPLOYEE WITNESSES

During this trial you have heard the testimony of a number of witnesses, some of whom

are employees of the City of Binghamton. The testimony of a government employee is not

necessarily deserving of more or less consideration, or greater or lesser weight, than that of an

ordinary witness.

At the same time, it is quite legitimate for the plaintiff's counsel to try to attack the

credibility of a City employee witness on the ground that his testimony may be colored by a

personal or professional interest in the case. It is your decision, after reviewing all of the

evidence, whether to accept the testimony of the state employee and to give that testimony

whatever weight, if any, you find that it deserves.

### POLICE OFFICER AND CIVILIAN WITNESSES

You have heard the testimony of witnesses who are civilians and the testimony of

witnesses who are police officers.

In evaluating this testimony, you are to apply the same standards of evaluation to each

witness. You shall not give any greater or lesser weight to the testimony of a witness solely

because of his occupation as a police officer.

### POLICE OFFICER WITNESS

You must evaluate the testimony of a police officer (or other law enforcement officer) in

the same manner you would evaluate the testimony of any other witness. You may not give special weight to his or her testimony because he or she is a law enforcement officer.

## POLICE OFFICER WITNESS—BIAS

Police officers testified at the trial. At the time of the occurrence involved in this case they were, and still are, employees of the defendant's Police Department, or are receiving pensions from them.

The fact that these witnesses were and still are employed by the defendant's police department or are receiving pensions from it, may be considered by you in determining whether his or her testimony was in any way influenced by his or her employment relationship with the police department.

## ACTION BY PRIVATE CITIZEN AGAINST POLICE OFFICERS - ALL PERSONS STAND EQUAL BEFORE THE LAW

As you know, this action was brought by a private citizen against police officers of the City of Binghamton. This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar station in life. All persons stand equal before the law and are to be dealt with as equals in a court of justice.

## ACTION AGAINST GOVERNMENTAL AGENCY

The fact that a governmental entity is involved in this case as a party must not affect your decision in any way. In other words, a governmental entity and all other parties stand as equals in a court of law.

## LAWYER'S STATEMENTS NOT EVIDENCE

During the trial the lawyers for the parties will make opening and closing statements. Sometimes the lawyers will make statements before introducing evidence. At other times they

6

may make arguments to me concerning the admissibility of evidence. These statements and arguments of the lawyers are their views of the evidence, or what they anticipate the evidence will be. It is important that you keep in mind at all times during the trial and deliberations that the lawyers' statements and arguments are not themselves evidence.

## NEGLIGENCE

Negligence is lack of ordinary care. It is a failure to use that degree of care that degree of care that reasonably prudent person would have used under the same circumstances.  Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances.

A person, such a police officer, who has special training and experience when acting as a professional police officer, has the duty to use the same degree of skill and care that other reasonably prudent professional police officers, would reasonably use in the same situation. Police Officer Kevin Miller and some of the other police involved in this case claimed to have special skills not only in police work generally, but of the higher specialized skills belonging to those police who are members of a SWAT Unit.

### *Liability for the Conduct of Another: Employer-Employee*

### *Scope of Employment*

An employer is responsible for the act of its employee if the act is within furtherance of the employer's business and is within the scope of the employee's authority. An act is within the scope of an employee's authority if it is performed while the employee is engaged generally in the performance of his or her assigned duties or if the act is reasonably necessary or incidental to the employment. The employer need not have authorized the specific act in question.

7

If you find that any person or persons employed by the City of Binghamton or acting on its behalf, including but not limited to all members of its Police Department, including but not limited to Officer Kevin Miller, acted negligently or wrongfully, and that their act(s) or omission(s) was a proximate cause of injury to the plaintiff , while said person or persons were acting within the scope of their authority and in furtherance of the City of Binghamton's business, then the City of Binghamton is legally responsible for such conduct.

In this case, it is undisputed that Office Kevin Miller and all members of its police department that you have heard about, were acting within the furtherance of the City of Binghamton's business and within the scope of their authority, and the City of Binghamton is legally responsible for such conduct.

### ***Prohibited Act***

Even if you find that the City of Binghamton, the employer, specifically instructed Officer Kevin Miller and other employee members of its Police Department, not to perform their duties as they did on August 25, 2011, as it is undisputed that as they performed their duties in furtherance of the employer's business and their conduct was reasonably foreseeable by the employer, and that it was within the scope of the employees' authority, and the City of Binghamton is legally responsible for such conduct.

### ***Willful Tort***

Even if you find that the employee's act was intentional, the employer is nonetheless responsible for the plaintiff's injuries as it is undisputed that its employees were acting in furtherance of the employer's business and within the scope of the employees' authority, and the City of Binghamton is legally responsible for such conduct.

### *Negligent Use of a Firearm*

A very high degree of care is required from all persons using firearms in the immediate vicinity of other people, no matter how lawful, or even necessary, such use may be.  The utmost care must be exercised in handling firearms.  Firearms are dangerous instrumentalities that require extraordinary care.

A Police Officer is bound to know that an AR-15 assault rifle (as is in the instant case) is a dangerous and hazardous weapon, requiring a very high degree of care.   Police are not allowed to employ force carelessly or unnecessarily. The firing of a weapon indiscriminately at a man at fairly close range is gross negligence.

A Police Officer that employs deadly physical force must exercise that degree of care which would reasonably be required of a reasonably prudent Police Officer under similar circumstances. In determining whether an excessive amount of force was used, you may consider the extent of the injuries suffered by the plaintiff.

### *Standards of Care*

In this regard you have heard testimony with respect professional police standards of care or good and accepted police practices and procedures, and written police policies.  You have heard how some of these professional police standards of care or good and accepted police practices and procedures, and written police policies, require a police department and its members: to consider the safety of the community at all times; to use the minimum amount of necessary force at all times; to comply with civil rights given to all by the US Constitution and laws; to only use deadly physical force when it is objectively reasonable to do so because of the imminent threat of deadly physical force being used against the officer or others; to be familiar with the laws of arrest and seizure, and that a person may only be seized when there is probable

cause to believe that the person has committed a crime and to release custody of the person as soon as it is reasonably clear that it is safe to do so.

If you find that the defendant City of Binghamton, through any of its employees or agents, and/or defendant Police Officer Kevin Miller, violated any of these or other pertinent professional police standards of care or good and accepted police practices and procedures, and written police policies, you may consider the violation as some evidence of negligence, along with the other evidence in the case, provided that such violation was a proximate cause of the harm sustained.

### *Summary*

In other words, you may find that the defendant City of Binghamton, through its employees or agents, was negligent or acted wrongfully, and that said negligence or wrongful conduct was a proximate cause of injury to plaintiff, regardless of whether or not you find that Officer Kevin Miller acted negligently or wrongfully. Similarly, you may find that Officer Kevin Miller acted negligently or wrongfully but that no other employee or agent of the City of Binghamton acted negligently or wrongfully. You may also find that the defendant City of Binghamton, through its employees or agents, and Officer Miller were negligent or acted wrongfully, and that said negligence or wrongful conduct was a proximate cause of injury to plaintiff. Or you may find that neither the defendant City of Binghamton, through its employees or agents, or Officer Miller were negligent or acted wrongfully, or that said conduct was not a proximate cause of injury to plaintiff.

If you find that the defendant City of Binghamton, through any of its employees or agents, and/or defendant Police Officer Kevin Miller, failed to use the same degree of skill and care that other prudent and reasonable professional police officers, including but not limited to

those operating in a SWAT Unit, would reasonably use in the same situation, then with respect to the negligence of the defendants, you must find in favor of the plaintiff and against the defendants.  If you find that defendants used the same degree of skill and care that other prudent and reasonable professional police officers, including but not limited to those operating in a SWAT Unit, would reasonably use in the same situation, then you must find in favor of the defense with respect to their negligence.

### *Proximate Cause- In General*

An act of omission is regarded as a cause of an injury if it was a substantial factor in bringing about the injury that is, if it had such an effect in producing the injury that reasonable people would regard it as a cause of the injury. There may be more than one cause of an injury, but to be substantial, it cannot be slight or trivial. You may, however, decide that a cause is substantial even if you assign a relatively small percentage to it.

### *Proximate Cause- Concurrent Causes*

There may be more than one cause of an injury. Where the independent and negligent acts or omissions of two or more parties cause injury to another, each of those negligent acts or omissions is regarded as a cause of that injury provided that it was a substantial factor in bringing about that injury.

### **FALSE ARREST**

As you have heard, the plaintiff seeks damages for false, arrest. A person commits a false arrest, if he or she, intentionally and without the right to do so arrests or takes into custody another person who is aware of the arrest and does not consent to it.

Plaintiff claims that the defendant City of Binghamton, through its employees or agents, arrested him without an arrest warrant to arrest Jesus Ferreira, and never charged him with a

crime and caused him to sustain damages. Defendants deny that they arrested plaintiff, and admit that they did not have a warrant to arrest plaintiff, but say that under the circumstances the arrest was lawful.

Defendants, as police officers, had the right to arrest plaintiff without a warrant if they had probable cause to believe that both a crime had been committed and that plaintiff had committed it. Defendants must prove that they had probable cause for believing that a crime had been committed and that plaintiff was the person who had committed it, or that they never arrested plaintiff.

Probable cause for plaintiff's arrest existed if the facts and circumstances known to defendants, or the information that they had before making the arrest, were such as to lead a reasonably prudent person to believe that both a crime had been committed and plaintiff was the person who had committed it. If the arrest of plaintiff was made with probable cause it was lawful even though plaintiff was not charged with a crime.

Defendants claim that they never arrested plaintiff or at the time they arrested him, the facts as they appeared to them were sufficient to constitute probable cause. If you find that the facts appeared to defendants as they claim and that a reasonably prudent person would have believed that those were the facts, your finding will be that defendants had probable cause to believe that both a crime had been committed, and plaintiff had committed it, and your finding will be that there was no false arrest.

If you find that the facts as they appeared to defendants were not as they claim, that they lacked probable cause to believe that both a crime had been committed and that plaintiff had committed it or that it was not reasonable for them to have believed that those were the facts or that it was not reasonable for them to conclude that plaintiff had committed a crime, your finding

will be that defendants did not have probable cause for the arrest and that there was a false arrest, and your verdict must be for the plaintiff and against the defendants.

## FALSE IMPRISONMENT

As you have heard, this is an action to recover damages for false imprisonment. A person falsely imprisons another person if he intentionally and without the right to do so confines that person and that person is aware of being confined and does not consent to it. The defendant City of Binghamton, through its employees or agents, claims that they reasonably believed that the plaintiff had committed a crime. Defendants also claim that plaintiff was detained in a reasonable manner and for no more than a reasonable period of time to permit investigation. Defendants have the burden of establishing this defense by a preponderance of the evidence.

If you find that defendants have proved that they had a reasonable basis for believing that plaintiff committed a crime, and that plaintiff was detained in a reasonable manner, and that plaintiff was detained for no more than a reasonable period of time to permit investigation, you will find that there was no false imprisonment.

If you find that defendants have failed to prove that they had a reasonable basis for believing that plaintiff committed a crime, and that plaintiff was detained in a reasonable manner, or for no more than a reasonable period of time to permit investigation, you will find that there was false imprisonment and your verdict must be in favor of the plaintiff and against the defendants.

## ASSAULT

This is an action to recover damages for assault. An assault is the intentional placing of another person in apprehension of imminent-harmful- or offensive contact. A defendant, through its employees or agents, is liable for assault when it intentionally causes another person to

become concerned that the defendant is about to cause a harmful or offensive bodily contact. In order to commit an assault, the defendant must have the real or apparent ability to bring about that harmful or offensive bodily contact. Ordinarily, threatening words without some action are not enough to constitute an assault. There must be some menacing act or gesture that causes the plaintiff to believe that a harmful or offensive bodily contact is about to occur. It is not necessary that there be any contact.

Notice that I used the word "intentionally" in defining an assault. Intent involves the state of mind with which an act is done. If a person acts voluntarily with a desire to bring about a result, he is said to have intended that result. Further, although he has no desire to bring about the result, if he does the act knowing with substantial certainty, that the result will follow, he is also said to have intended that result.

The plaintiff claims that the defendant City of Binghamton, through its employees or agents: shot him, then threw him on the floor, and then tightly handcuffed his hands behind his back, and kept the tight handcuffs on him from about 6:30 am through about 4:15 pm, including while plaintiff was in an ambulance and then a hospital, even though plaintiff was never charged with a crime. The defendants deny that they did so. If you find that the defendant voluntarily shot him, or then threw him on the floor, or then tightly handcuffed his hands behind his back, or kept the tight handcuffs on him from about 6:30 am through about 4:15 pm, including while plaintiff was under the direct supervision of the police, and was in an ambulance and then a hospital, even though plaintiff was never charged with a crime, and that the defendant intended by doing so to cause the plaintiff to become apprehensive that a harmful, or offensive bodily contact was about to occur, and that the defendant had the real or apparent ability to carry out the threat and that the plaintiff had such apprehension, you will find that the defendant committed an assault and find in

14

favor of the plaintiff and against the defendants.

If you find that the defendant City of Binghamton, through its employees or agents, did not voluntarily shoot him, or then throw him on the floor, or then tightly handcuff his hands behind his back, or keep the tight handcuffs on him from about 6:30 am through about 4:15 pm, including while plaintiff was in an ambulance and then a hospital, even though plaintiff was never charged with a crime or that although the defendant did any or all of these acts the defendants did not intend to cause the plaintiff to become apprehensive that a harmful or offensive bodily contact was about to occur, or that the defendant had neither the real nor apparent ability to carry out the threat, or that the plaintiff did not become apprehensive, you will find that the defendant did not commit an assault.

## **BATTERY**

In this action, plaintiff seeks damages for battery. A person who intentionally touches another person, without that person's consent, and causes an offensive bodily contact commits a battery and is liable for all damages resulting from his act.

Intent involves the state of mind with which an act is done. The intent required for battery is intent to cause a bodily contact that a reasonable person would find offensive. An offensive bodily contact is one that is done for the purpose of harming another or one that offends a reasonable sense of personal dignity, or one that is otherwise wrongful.

Plaintiff claims that defendant City of Binghamton, through its employees or agents, shot him, then threw him on the floor, and then tightly handcuffed his hands behind his back, and kept the tight handcuffs on him from about 6:30 am through about 4:15 pm, including while plaintiff was in an ambulance and then a hospital, even though plaintiff was never charged with a crime.  Defendants admit that they shot plaintiff, moved his body from the couch to the floor,

and handcuffed for the time period in question, but that they did not do so intentionally or that said contact was not offensive or that said act(s) were necessary and justified as self-defense, and they are therefore not liable.

If you find that defendants intentionally and voluntarily shot him, or then threw him on the floor, or then tightly handcuffed his hands behind his back, or kept the tight handcuffs on him from about 6:30 am through about 4:15 pm, under direct police supervision, including while plaintiff was in an ambulance and then a hospital, even though plaintiff was never charged with a crime, and that contact was offensive, you will find that defendants committed a battery and your verdict must be in favor of the plaintiff and against the defendants.

If you find that defendants did not intentionally and voluntarily shoot him, or then throw him on the floor, or then tightly handcuff his hands behind his back, or keep the tight handcuffs on him from about 6:30 am through about 4:15 pm, under direct police supervision including while plaintiff was in an ambulance and then a hospital, even though plaintiff was never charged with a crime, or that, although they did so, that such contact was not offensive or that said act(s) were necessary and justified for self-defense by defendants, you will find that defendants did not commit a battery or that they are not liable for any damages to plaintiff.

Defendants have the burden of establishing that said act(s) were necessary and justified by a fair preponderance of the credible evidence, as I have defined that term for you. In order to establish that said act(s) were necessary and justified as self-defense, defendants must establish that they objectively and reasonably believed that plaintiff was attacking them with deadly physical force and was about to do so from the time that Officer Miller shot Ferreira through about 4:15 pm , and that, the force that defendants used to prevent injury to themselves was reasonable under the circumstances.

If you find that defendants had an objectively reasonable belief that they were facing an imminent and deadly physical attack from plaintiff and that the force that defendants used from the time that Officer Miller shot Ferreira through about 4:15 pm, was reasonable under the circumstances, you will find that defendants were acting in self-defense and are not liable for battery. If you find that defendants did not have an objective and reasonable belief that they were facing an imminent and deadly physical attack from plaintiff or that even though defendants did face harm from plaintiff, that the force that they used was not reasonable under the cir-cumstances, you will find that defendants were not acting in self-defense and are therefore liable for battery, and your verdict must be in favor of the plaintiff and against the defendants.

## BATTERY COMMITTED IN PERFORMANCE OF PUBLIC DUTY OR AUTHORITY

One who seeks to make a lawful arrest or place another person lawfully in custody, has the right to use as much force as he reasonably believes is necessary in order to make the arrest, or prevent such person's escape, and can be held liable only if the force used was excessive.

Plaintiff claims that defendant City of Binghamton, through its employees or agents, were in the process of unlawfully arresting, seizing or placing plaintiff into defendants' custody, and while plaintiff was in defendant's custody, after defendants intentionally and voluntarily shot him, they then threw him on the floor, then tightly handcuffed his hands behind his back, and kept the tight handcuffs on him from about 6:30 am through about 4:15 pm, including while plaintiff was in an ambulance and then a hospital, even though plaintiff was never charged with a crime, without provocation causing plaintiff to sustain injuries. Defendants admits shooting plaintiff, then moving him from the couch to the floor, and then handcuffing plaintiff's hands behind his back, and keeping plaintiff handcuffed from about 6:30 am through about 4:15 pm, including while plaintiff was in an ambulance and then a hospital, even though plaintiff was

never charged with a crime, but says that defendants used only as much force as they reasonably believed was necessary under the circumstances to prevent him from escaping or interfering with a search of the premises.

Defendants have the burden of establishing that said act(s) were necessary and justified by a fair preponderance of the credible evidence, as I have defined that term for you. In order to establish  that said act(s) were necessary and justified as self-defense, defendants must establish that they objectively and reasonably believed that plaintiff was attacking them with deadly physical force and was about to do so from the time that Officer Miller shot Ferreira through about 4:15 pm, or that plaintiff was attempting to escape or interfere with a search of the premises,  and that, the force that defendants used to prevent injury to themselves or prevent plaintiff from attempting to escape or interfere with a search of the premises, was reasonable under the circumstances.

Taking into consideration all of the circumstances existing at the times and places of the incident, if you find that it was not reasonable for defendants' to believe that plaintiff was attempting to escape or interfere with a search of the premises, then defendant was not justified in using force at all and you will find that defendants committed a battery. If, however, you find that defendant reasonably believed that plaintiff was attempting to escape or interfere with a search of the premises, and that defendant was justified in using force to the extent that defendants reasonably believed it necessary to prevent the escape or interfere with a search of the premises, you must then decide whether the force used was reasonably believed by defendant to be necessary. In making that decision, you must take into consideration all of the circumstances confronting defendants at the times, and places of the incident, including the ambulance and hospital such as what defendants saw and heard; whether there was assistance available to

defendants. Defendants were not required, at their own peril, to measure the precise amount of force necessary.  If by these standards defendant used excessive force to accomplish their purpose, defendants committed a battery and are liable for damages resulting from their act.

If you find that defendants reasonably believed that plaintiff was attempting to escape or interfere with a search of the premises throughout the entire incident, from the time Officer Miller shot Ferreira before 6:30 am to about 4:15 pm, including in the ambulance and in the hospital, and that defendant used no more force than defendant reasonably believed necessary, you will find that defendant committed no battery. If you find that defendant did not reasonably believe that plaintiff was attempting to escape or interfere with a search of the premises, or you find that defendants did not reasonably believe the force used was necessary under the circumstances, you will find that defendants committed a battery and your verdict must be in favor of the plaintiff and against the defendants.

## CIVIL RIGHTS

Plaintiff claims that defendants violated his rights under the Fourth Amendment to the United States Constitution when defendants used excessive force against him, and in unreasonably seizing/arresting plaintiff.  Defendants deny that the force used was excessive, and deny that they unreasonably seized or arrested plaintiff.

### *The Statute and Its Function*

Plaintiff asserts a claim under a federal civil rights law, 42 U.S.C. § 1983.The statute provides a remedy for individuals who have been deprived of their federal constitutional rights under color of state law. Section 1983 states in part that:

> Every person who, under color of [state law], subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the depri-vation of any rights, privileges, or immunities secured by the [United States] Constitution and [federal] laws, shall be liable to the party injured [for damages].

19

Section 1983 creates a form of liability in favor of individuals who have been deprived of rights secured to them by the United States Constitution. It was passed by Congress to enforce the Fourteenth Amendment of the Constitution. The Fourteenth Amendment provides in relevant part that:

> [N]o state shall . . . deprive any person of life, liberty, or property, without due process of law nor deny "to any person within its jurisdiction the equal protection of the laws.

Section 1983 itself does not establish or create any federally protected right. Rather, it is the statute that allows the plaintiff in this case to enforce rights guaranteed to him by the federal Constitution.

### *Seizure/Arrest*

The Fourth Amendment prohibits unreasonable seizures. An arrest is a seizure within the meaning of the Fourth Amendment.

The plaintiff, Jesus Ferreira, asserts that the defendant police officers violated his Fourth Amendment rights when they seized him apartment without an arrest warrant to arrest him. There is no dispute that the police had a search warrant to enter 11 Vine Street in Binghamton. There is also no dispute that the defendants did not have a warrant to arrest plaintiff, Jesus Ferreira.

The fact that the police had a search warrant did not itself give the defendant police officers justification to seize the plaintiff. Arrest warrants and search warrants protect different interests. An arrest warrant protects an individual from unreasonable seizure by the government; a search warrant protects an individual's privacy in her home and possessions from unjustified intrusion by the police.

The search warrant to search the premises at 11 Vine Street, Binghamton, NY, alone did

not justify police seizure of plaintiff, Jesus Ferreira, because a search warrant is needed to protect the rights of the person whose apartment is being searched.  An arrest warrant is necessary to seize a person, unless there were exigent circumstances facing the police. It is for you, the jury, to determine (1) whether the plaintiff consented to his being seized; or (2) whether there were exigent circumstances facing the officers. An exigent circumstance would exist if the officers had reasonable grounds to believe that Mr. Ferreira posed an immediate and objectively probable threat of causing serious bodily harm to the police or others, or if the officers had reasonable grounds to believe that unless Mr. Ferreira was seized immediately, he was likely to destroy evidence that was being searched for.

### *Excessive Force*

While a police officer may use reasonable force in making an arrest, the Fourth Amendment prohibits the use of unreasonable force.

The Fourth Amendment to the United States Constitution protects persons from being subjected "to excessive force" by police. In other words, a law enforcement officer may only use the amount of force necessary under the circumstances to make an arrest or stop. Every person has the constitutional right not to be subjected to excessive force while being arrested or stopped by police, even if the arrest or stop is otherwise proper.

In this case, plaintiff claims that defendant violated his Fourth Amendment rights by using deadly force against plaintiff.

An officer may not use deadly force unless deadly force is necessary and the officer has probable cause to objectively believe that the suspect poses an imminent and significant threat of death or serious physical injury to the officer or others. Also, the officer must give the suspect a warning before using deadly force, if it is feasible under the circumstances to do so.

21

In order to establish that the defendant violated the Fourth Amendment by using deadly force, plaintiff must prove through the preponderance of the evidence that defendant committed acts that constituted deadly force against the plaintiff. If you find that defendant shot the plaintiff, then you have found that defendant used deadly force.  Plaintiff must prove through the preponderance of the evidence at least one of the following things:

- defendant did not have probable cause to objectively and reasonably believe that plaintiff posed an imminent and significant threat of death or serious physical injury to defendant officer or others; or
- It would have been feasible for defendant to give plaintiff a warning before using deadly force, but defendant did not do so.

You must decide whether the use of deadly force by defendants in arresting plaintiff was reasonable or not. Reasonable force means the amount of force that a reasonable and prudent police officer would use in making the arrest under the same facts and circumstances facing defendants.

In deciding this question, you must not consider defendants' underlying intent or motivation. In other words, even if defendants acted with evil intent, the force used will not be considered excessive if the force used was reasonable under the surrounding circumstances. On the other hand, even if defendants acted with good intent and in good faith, if the force used was unreasonable given the surrounding circumstances, then it was unlawful. Section 1983 does not require the plaintiff to demonstrate that the defendant acted willfully, or with the specific intent to violate the plaintiff's federally protected rights. Nor does § 1983 require the plaintiff to show that the defendant abused governmental power.

A police officer may only use deadly force against a suspect if the suspect proves that he or she poses an objective and imminent threat of deadly physical force and serious bodily harm to the officer or others.

If you find that at the time of the shooting Officer Miller had objective proof that he reasonably believed the Plaintiff posed an objectively imminent and significant threat of deadly physical force and serious bodily harm to the officer or others, and that the Officer had probable cause to objectively believe that the suspect posed a significant threat of death or physical harm to the Officer or others, then in that circumstance of this case, you must find for the defendant.

In this case, plaintiff claims that the force used was unreasonable in that plaintiff claims that defendants' police officers shot him, then threw him on the floor, and then tightly handcuffed his hands behind his back, and kept the tight handcuffs on him from about 6:30 am through about 4:15 pm, while he was under the supervision of police, including while plaintiff was in an ambulance and then a hospital, even though plaintiff was never charged with a crime. Defendants deny that the force was unreasonable and asserts defendants objectively and reasonably believed that plaintiff was imminently about to use deadly physical force against Officer Miller, and then that plaintiff was attempting to escape or interfere with a search of the premises throughout the entire incident, from about 6:30 am to about 4:15 pm, including in the ambulance and in the hospital, and that defendant used no more force than defendant reasonably believed necessary. In deciding whether the force used was reasonable, you should consider all of the surrounding facts, and circumstances, including whether plaintiff objectively presented an immediate and deadly threat to defendants' safety or anyone else's safety, and whether plaintiff was actively resisting arrest at the time the force was used.

If you find that defendants' use of force was reasonable under the circumstances, you will find for defendants. If you find that defendants' use of force was not reasonable under the circumstances, you will find for plaintiff.

If you find that defendants' seizure or arrest of plaintiff after he was shot by Officer

Miller, including handcuffing plaintiff's hands behind his back and the continued use of handcuffs and police supervision, from about 6:30 am through about 4:15 pm, including in the ambulance and hospital, of plaintiff, you will find for defendants. If you find that defendants' seizure or arrest of plaintiff after he was shot by Officer Miller, including handcuffing plaintiff's hands behind his back and the continued use of handcuffs and police supervision, including the times and locations involved, from about 6:30 am through about 4:15 pm, including in the ambulance and hospital, of plaintiff,  was not reasonable under the circumstances, then your verdict must be in favor of the plaintiff and against the defendants.

### *Police Cover-Up of Police Misconduct in Deadly Force Cases - Right of Access to Courts*

The complaint in this case alleges that the defendant police officers inflicted unconstitutional deadly force upon Mr. Ferreira, and engaged in a cover-up of police misconduct. I have already instructed you as to the law governing the use of deadly force. I will now instruct you on the law relating to the cover-up claim.

The Due Process Clause of the Fourteenth Amendment to the Federal Constitution guarantees individuals a right of meaningful access to the courts to redress their grievances. It would be a violation of the right to access the courts for one or more of the defendant police officers to keep Mr. Ferreira from discovering and proving a violation of constitutional rights, if that effort succeeded.

A cover-up is an intentional attempt-by one or more governmental officials to conceal facts about events to protect themselves from a potential civil lawsuit. In order to recover on their cover-up claims, the plaintiffs must convince you, by a preponderance of the evidence, that at least one of the purposes of the cover-up was a desire to frustrate the ability of Mr. Ferreira to realize that he had a claim, and to prove that claim.

In order to prove a cover-up of a judicial claim, the plaintiff must prove that acts or omissions that may have been made by the defendant department and its police officers was intended to keep the plaintiff from discovering and proving a violation of Mr. Ferreira's rights, and that it succeeded in that effort.

The plaintiff is not required to prove that the defendants were involved in a conspiracy to cover up the alleged misconduct. A conspiracy is not required to establish plaintiff's right to recover under § 1983 in this case.

The mere fact that the plaintiff filed this lawsuit despite the alleged cover-up of the defendants' shooting of Mr. Ferreira, does not extinguish the defendants' potential liability for the alleged cover-up. When public officials engage in a cover-up in the hope of keeping a civil suit from being filed and continue that cover-up once a case has commenced, the plaintiff is entitled to recover under § 1983 for having been denied adequate access to the courts if, as a result of the cover-up, the plaintiff cannot recover damages on an apparently meritorious claim that constitutional rights were violated.

In determining whether there was a cover-up that violated the plaintiff's constitutionally protected right of access to the courts, you must consider the conduct of each defendant separately. You must determine with respect to defendant, whether any of its police officer personally and intentionally took some action intended to cover up what really happened to Mr. Ferreira before this suit was filed, and whether that conduct resulted in the plaintiff being denied a recovery on a meritorious claim.

If you find that the with respect to defendant, whether any of its police officer personally and intentionally took some action intended to cover up what really happened to Mr. Ferreira before this suit was filed, and whether that conduct resulted in the plaintiff being denied a

recovery on a meritorious claim because he could not prove his claims herein, then your verdict must be in favor of the plaintiff and against the defendants.

### Claims Against Officer Who Used Force and Against Liability of On-Looking Officer Who Failed to Intervene

The plaintiff contends that defendants, police officers were present when he was allegedly subjected to an unlawful arrest and detention and excessive use of force by other officers, and that they made no effort to stop the unlawful arrest or force. All law enforcement officials have an affirmative duty to intervene to protect the Constitutional rights of citizens from infringement by other law enforcement officials in their presence. I instruct you that an officer who fails to intercede is liable for the preventable harm caused by the actions of another officer if that officer either observes or has reason to know that excessive force is being used or that a citizen has been unjustifiably arrested. However, before an officer can be held liable for failure to intervene, you must find that the officer had a realistic opportunity to prevent the harm from occurring, that is, that he had sufficient time to intercede and a capability to prevent the harm.

Thus, before you can hold defendants liable for its officers for this claim, you must conclude that the following elements have been met:

*First:* that defendants' officer(s) subjected plaintiff to an unlawful arrest and detention, or the use of excessive force, or both;

*Second:* that defendants' officer(s) or any one of them, observed those actions and knew or should have known that they were unlawful;

*Third:* that defendants' observing officer(s), or any of them, had a realistic opportunity to intervene, as I have just described that phrase; and

*Fourth:* that defendants failed to take reasonable steps to prevent the violations of the plaintiff's constitutional rights.

If you find that the plaintiff has met these four elements, then you must find the defendant or defendants liable for any injuries that you conclude were a proximate result of the

unlawful arrest and detention, or excessive force, or both, and your verdict must be in favor of the plaintiff and against the defendants.

## CAUTIONARY INSTRUCTION ON DAMAGES

You should not reach the issue of damages unless you find that the plaintiff has established liability on at least one of his liability claims.

If you find that the plaintiff is entitled to recover against any or all of the defendants, then you will have to determine the amount of damages that will fairly and reasonably compensate him for those injuries that you find the plaintiff has sustained as a result of any or all of his claims.

Simply because I am giving you instructions on the subject of damages should not be construed by you as any indication that I believe you should find for the plaintiff. That is entirely up to you. I have to charge you on the law of damages in the event that you find that the plaintiff is entitled to recover damages. Only then do you have to know how to go about computing damages. Thus, in instructing you on damages, I am not expressing any views one way or the other as to whether the plaintiff should recover in this case.

Should you decide that the plaintiff has proved his claim by a preponderance of the evidence, you must consider awarding three types of damages: compensatory damages, nominal damages, and punitive damages.

## INDEMNIFICATION OF COMPENSATORY DAMAGES

The City of Binghamton is authorized to indemnify the defendant Police Officer Kevin Miller, for any compensatory damages that you may award against him. Nevertheless, you must determine the amount of compensatory damages you award to the plaintiff, if any, without regard to whether or not the City will in fact indemnify the defendant. The amount of compensatory

27

damages awarded should be based solely upon the injuries actually suffered by the plaintiff and without regard to the defendant's financial circumstances.

### CAUTIONARY INSTRUCTION CONCERNING COUNSEL'S REQUEST FOR DAMAGES

I instruct you that an attorney's statement to you of the amount of damages you should award the plaintiff is not binding upon you. It is not evidence; it is only a lawyer's statement.

It is the sole and exclusive function of the jury to determine the amount of money, if any, that will justly and fairly compensate the plaintiff for any injuries and damages he has sustained. You are to make that determination solely on the basis of the evidence in this case, and on the law I will give you, and not on the basis of an attorney's statement, claim, or argument.

### NOMINAL DAMAGES

Nominal damages are awarded when the plaintiff has been deprived by a defendant of a federal constitutional right, but has suffered no actual damage as a natural consequence of that deprivation. This is because merely suffering constitutional deprivation is an injury that must be recognized.

Therefore, if you return a verdict for the plaintiff on a federal Section 1983 claim, but find that the plaintiff has failed to prove, by a preponderance of the evidence, that he suffered any actual damages, then you must return an award of nominal damages not to exceed the sum of one dollar, on the particular claim.

### COMPENSATORY DAMAGES—GENERAL PRINCIPLES—PAST AND FUTURE DAMAGES

If you find that the defendant is liable to the plaintiff, then you must determine an amount that is fair compensation for all of the plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole—

that is, to compensate the plaintiff for the damage that the plaintiff has suffered. Compensatory damages are not limited to expenses that the plaintiff may have incurred because of his injury. If the plaintiff wins, he is entitled to, in addition to his expenses incurred as a result of his injuries, compensatory damages for the physical injury, pain and suffering, mental anguish, emotional distress, shock, fright, personal limitations, disability, disfigurement/scarring, discomfort and loss of enjoyment of life that he has suffered because of the defendant's conduct.

In determining the amount of damages, if any, to be awarded to the plaintiff for pain and suffering, you may take into consideration the effect that the plaintiff's injuries may have had on his ability to enjoy life. Loss of enjoyment of life includes the loss of one's ability to perform daily tasks, to participate in the activities that were a part of one's life before the incident, and to experience the pleasures of life. However, a person suffers a loss of his enjoyment of life only if the person is aware, at some level, of the loss that he has suffered.

No evidence of the value of intangible things, such as mental or physical pain and suffering, has been or need be introduced, and there is no exact standard for fixing compensation to be awarded for intangible things such as mental or physical pain and suffering. The jury should be guided by dispassionate common sense and sound discretion to make an award that is fair in light of the evidence.

We all know that the nature and degree of pain and mental distress may differ widely from person to person. Consequently, the law does not have a precise formula by which pain or emotional distress as an element of compensatory damages may be measured and reduced to dollars and cents. Instead of providing a formula for measuring these damages, the law leaves the determination of the amount of damages to the common sense and good judgment of you, the jurors. You should arrive at a monetary amount, in the light of your common knowledge and

general experience, and without regard to sentiment, that you find to be fair, reasonable, and adequate. In other words, without favor, without sympathy, and without any precise formula, you must arrive at a sum of money that will justly, fairly, and adequately compensate the plaintiff for the actual pain, suffering, and emotional distress and other injuries you find that he endured and is likely to experience in the future, and that were proximately caused by any or all of the wrongful acts you have found that the defendants are liable for. The amount of damages should be neither excessive nor inadequate. It should be fair, just, and reasonable.

If you decide to award compensatory damages, you should be guided by common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstance permit.

You must use sound discretion in fixing an award of compensatory damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances.

You should consider the following elements of damages, to the extent you find them proved by a preponderance of the evidence.

### *Damages Accrued*

If you find for the plaintiff, he is entitled to recover an amount that will fairly compensate him for any damages he has suffered to date.

If you find that medical, hospital, surgical, anesthesia, x-rays, psychological/psychiatric/counseling, and therapy etc., expenses were reasonably and necessarily incurred by the plaintiff as a result of injuries sustained in this incident, you must award such expenses.

*Calculation of Future Damages*

If you find that the plaintiff is reasonably likely to suffer damages in the future from his injuries, then you should award him the amount you believe would fairly compensate him for such future damages.

If you find that any medical, hospital, surgical, anesthesia, x-rays, psychological/psychiatric/counseling and therapy etc., expenses are reasonably likely to be incurred in the future by the plaintiff as a result of injuries sustained in this incident, you must award such expenses.

If the plaintiff has established that her injuries, if any, are permanent, you must take that fact into consideration in fixing the amount of compensatory damages. You should take into consideration the period of time that has elapsed from the date of the plaintiff's injury to the present time, and the period of time that the plaintiff can be expected to live. In calculating future damages, you may consider the standard table of mortality as compiled by the United States Bureau of the Census, or other recognized morality table.  According to these tables, plaintiff Jesus Ferreira has a life expectancy of another 39 years. In this connection, I am instructing you that the plaintiff can be expected to live for 39 more years, according to the most recent life expectancy tables published by the United States government.

Life expectancy tables are, of course, nothing more than statistical averages. They neither assure the span of life that I have given you, nor assure that the span of life will not be greater. The life expectancy figure l have given you is not binding upon you. It may, however, be considered by you together with your own experience, and the evidence you have heard concerning the condition of the plaintiff's health, habits, employment, and activities, in determining her present life expectancy.

31

## PUNITIVE DAMAGES

If you should find that the defendant is liable for the plaintiff's injuries, then you have the discretion to award, in addition to compensatory damages, punitive damages. You may award punitive damages if the plaintiff proves by a preponderance of the evidence that the defendant's conduct was malicious and reckless, not merely unreasonable. An act is malicious and reckless if it is done in such a manner, and under such circumstances, as to reflect utter disregard for the potential consequences of the act on the safety and rights of others. The purpose of punitive damages is to punish a defendant for shocking conduct and to set an example or warning in order to deter him or her and others from committing similar acts in the future.

The awarding of punitive damages is within your discretion—you are not required to award them. Punitive damages are appropriate only for especially shocking and offensive misconduct. If you decide to award punitive damages, you must use sound reason in setting the amount—it must not reflect bias, prejudice, or sympathy toward any party. But the amount may be as large as you believe necessary to fulfill the purpose of punitive damages. In this regard, you may consider the financial resources of the defendant in fixing the amount of punitive damages (and you may impose' punitive damages against one or more of the defendants, and not others, or against more than one defendant in different amounts).

If you find from a preponderance of the evidence that the plaintiff is entitled to a verdict for either actual damages or nominal damages, and you further find that the conduct of the defendant, which proximately caused injury or damage to the plaintiff, was done maliciously, or wantonly, or oppressively, then you may add to the award of actual or nominal damages such amount, as you unanimously agree to be proper, as punitive damages.

An act or a failure to act is "maliciously" done, if prompted or accompanied by ill will, or

spite, or grudge, either toward the plaintiff individually, or toward all persons in the group or category of which the injured person is a member.

An, act or a failure to act is "wantonly" done, if done in reckless or callous disregard of, or indifference to, the rights of one or more persons, including the plaintiff.

An act or a failure to act is "oppressively" done, if done in a way or manner that injures, or damages, or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness or misfortune of the plaintiff.

If you unanimously find, from a preponderance of the evidence in the case, that the defendant's conduct, which proximately caused actual or nominal damage to the plaintiff, was done maliciously, or wantonly, or oppressively, it is within your discretion to decide whether to award punitive damages. However, such extraordinary damages may be allowed only if you should first unanimously award the plaintiff a verdict for either compensatory damages or nominal damages.

The amount of any punitive damages awarded must be fixed with calm discretion and sound reason, and must never be awarded, or fixed in amount, because of any sympathy, or bias, or prejudice with respect to any party in the case.

It is entirely up to you to decide whether or not punitive damages should be awarded. In this respect you have considerable discretion. You may decide that even though compensatory damages or nominal damages have been awarded, you believe that no punitive damages are called for.

The law does not have an objective yardstick for measuring punitive damages. You will have to use your own common sense and experience and determine what amount would be

appropriate to punish the defendants and to create a deterrent example. The amount of punitive damages should be fair and reasonable. It should take into account the degree of reprehensibility of the defendant's conduct and the relationship to the actual harm inflicted on the plaintiff. It should be proportionate to the need to punish the defendant and to deter him and others from like conduct; it should not be based on whim or on unrestrained imagination.

### *Amount of Punitive Damages*

Since you have found that Defendant Police Officer Kevin Miller is liable to the Plaintiff for punitive damages, it is now your duty to determine an appropriate amount of punitive damages against him. As a reminder, any punitive damages you award are against the Defendant Police Officer Miller and not against the City of Binghamton. Therefore, when I refer to punitive damages against the defendant, I am referring to Defendant Police Officer Miller.

The purposes of punitive damages are to punish the Defendant for shocking conduct and to set an example in order to deter him and others from committing similar acts in the future. Punitive damages are also intended to protect the community and to be an expression of the jury's indignation at the Defendant's misconduct.

You must use sound reason in setting the amount of punitive damages to award. It must not reflect bias, prejudice or sympathy toward any party, but the amount should be in a sum that you believe necessary to fulfill the purposes of punitive damages. In this regard, in fixing the amount of punitive damages, you should consider:

*One*, the nature of the Defendant's conduct against the Plaintiff;

*Two*, the impact of the Defendant's conduct on the Plaintiff;

*Three*, the relationship between the Defendant and the Plaintiff; and

*Four*, the likelihood that the Defendant would repeat the conduct if a punitive award is not made.

34

Accordingly, any award of punitive damages should be fixed in amount that will sufficiently punish the Defendant for his individual conduct and warn others not to engage in similar conduct.

Now, if you would just turn for a moment to the verdict form. It is a very simple form. On page two, one question: State the amount of punitive damages that you award to Plaintiff Jesus Ferreira against Defendant Police Officer Miller.

I must emphasize that in order to reach a verdict on the amount of punitive damages, it is necessary that all of you agree. Once you have reached a verdict on punitive damages, you must complete and sign the original verdict form, and you should then inform the Marshals that a verdict has been reached. You will be returned to the courtroom, and your verdict will be announced here in open court.

### *Indemnification of Punitive Damages*

The City of Binghamton has agreed to indemnify Officer Miller for any punitive damages that may be awarded against him in this case. If you decide to award punitive damages against Officer Miller, in fixing the amount of punitive damages, you may consider the fact that the City will indemnify Officer Miller. Given the City's decision to indemnify Officer Miller, you may consider the amount of punitive damages, if any, that may be necessary to stimulate actions by the City to punish and deter Officer Miller and other officers from repeating the type of unconstitutional conduct he engaged in.

Dated:  September 6, 2016
Bronx, New York

                                            _____/s/_____
                                            SONIN & GENIS, ESQS
                                            Robert J. Genis, Esq.
                                            Attorneys for Plaintiff
                                            One Fordham Plaza, Suite 907
                                            Bronx, New York 10458
                                            (718) 561-4444
                                            Email:bob.genis@soningenis.com