**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JESUS FERREIRA,

                    Plaintiff,

          vs.                                        3:13-CV-107

CITY OF BINGHAMTON,
BINGHAMTON POLICE DEPARTMENT, and
OFFICER KEVIN MILLER

                    Defendants.

_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

**DECISION and ORDER**

          Plaintiff Jesus Ferreira commenced the instant action pursuant to 42 U.S.C. §

1983 and state law, alleging that Defendants used excessive force against him when

executing a search warrant.  Before the Court are the parties' motions in limine.  See

dkt. #s 101-104.

**I.     BACKGROUND**

          In the early morning hours of August 25, 2011, a Binghamton Police Department

SWAT team executed a "no-knock" warrant at 11 Vine Street, a residence in that city.

Plaintiff, an overnight guest, was sleeping on the couch in the living room, which was

located near the front door.  After using a battering ram to break through the front door,

officers entered the living room.  Defendant Officer Kevin Miller, the first member of the

SWAT team to enter the building, shot the Plaintiff once.  Plaintiff suffered severe

injuries, leading to the removal of his spleen.

Plaintiff sued the City of Binghamton, the Binghamton Police Department, and Officer Miller, among others. Plaintiff alleged that Defendants violated his constitutional right to be free from excessive force and false arrest, both through the conduct of Defendant Miller and through the policies and practices of the Binghamton Police Department. Plaintiff also raised state-law tort claims. After motion practice, the only remaining Defendants were the Police Department, the City and Officer Miller. At the close of discovery, Defendants filed a motion for summary judgment, which the Court granted in part and denied in part. The parties then filed the instant motions in anticipation of trial.

## II. Analysis

### A.    Defendants' Motions

Defendants move to dismiss certain claims and to preclude evidence of various types on various grounds. The Court will address each issue in turn.

#### a.    Motions to Dismiss

Defendants offer argument as to why a number of the claims remaining in the case should be dismissed.

First, they contend that a Section 1983 claim of excessive force is identical to a state-law assault and battery claim, and that the Court should "simplify" the jury instructions by providing the same instruction to cover both claims. The Court fails to see how such an application is a proper subject for a motion in limine. The Court expects that the issue will be raised in the jury charge conference and will deny the motion with leave to renew at an appropriate time.

Next, Defendants argue that the Court should dismiss an claim for excessive force based on the use of handcuffs against the Plaintiff after he was shot. They argue that Plaintiff has not identified the officer who handcuffed him, and therefore cannot prevail on that claim. The Court has already addressed this issue in deciding Defendants' summary judgment motion.

Defendants here attempt to use a motion *in limine* to seek reconsideration of the Court's decision. When a party files a motion for reconsideration, "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995). Such a motion is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking 'a second bite at the apple[.]'" Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 41 (2d Cir. 2012) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)). Reconsideration should be granted when the moving party shows "'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE & PROCEDURE § 4478 at 790).

Even assuming that a motion for reconsideration is proper at this time, the Court will deny the motion. Defendants simply attempt to relitigate matters already decided by the Court in the Plaintiff's favor. The Court has already decided this issue and

3

Defendants' attempt to get a second bite at the apple and reargue the matter will be denied.

Defendants similarly argue that the Court should grant judgment on Plaintiff's claim that false arrest occurred when Defendants held him at the hospital after the shooting, even though they had no probable cause or arrest warrant and no cause to keep him detained in that setting. The Court has already ruled on this issue and will not entertain Defendants' attempt to revive it here. Similarly, the Court will deny the motion as it pertains to Plaintiff's general negligence claim.

Defendants also seek dismissal of Plaintiff's claims for improper movement of Plaintiff's body, negligent performance of duties, negligent infliction of emotional distress, and breach of special duty. Defendants offer legal argument that these claims are not available, but no explanation for why they did not seek to dismiss such claims at an earlier point in the litigation, either via a motion to dismiss or at the summary judgment stage. Such motions are inappropriate now, on the eve of trial. The motions will be denied, though the Court's decision does nothing to preclude Defendants from raising an appropriate motion on these issues at the close of the Plaintiff's case.

### b.    Evidentiary Motions

#### i.    Internal Affairs Complaints and/or Prior Disciplinary Actions Against Officers Involved in the Events in Question

Defendants first move to preclude introduction of any Internal Affairs reports concerning any officers who may testify at trial. They argue that introduction of such evidence is precluded by Federal Rules of Evidence 403 and 404(b) as unduly prejudicial and improper character evidence. The Defendants summarize the seven

incident reports in question but, citing the "sensitivity" of the material, do not include copies of the reports with their motion. They offer to have the Court review the evidence *in camera* if necessary. Plaintiff responds that the complaints are relevant to the Defendants' intent in using force against him. Thus, incidents of "past complaints of excessive force, false arrest, civil rights violations, misconduct, failure to comply with police procedures, and prior instances of untruthfulness" become relevant. Such past disciplinary proceedings could also be used to impeach witnesses and undermine their credibility.

Defendants' motion concerns records of investigations into civil complaints against Binghamton police officers. Such evidence would not provide any insight into the events on the day in question, and Plaintiff apparently does not intend to offer such evidence for that purpose. Instead, Plaintiff appears to offer the evidence to establish intent or motive, and perhaps lack of mistake. Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). Such evidence is admissible for other purposes, however, "such as proving motive, opportunity, intent, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). "Under Rule 404(b), wrongful acts evidence may not be admitted merely to show the defendant's propensity to commit the act in question." Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991). That "evidence may be admitted," however, "for any other relevant purpose under our 'inclusionary' approach." Id. (quoting United States v. Brennan, 798 F.2d 581, 589 (2d Cir. 1986)).

A court has "broad discretion" in determining whether to admit such evidence, but the court must also weigh the probative value of the evidence against its prejudicial effect pursuant to Rule 403. Id. "The Second Circuit has stated that for evidence of prior complaints against a police officer to be admissible under Rule 404(b) for the purpose of establishing a pattern of conduct, 'the extrinsic acts must share unusual characteristics with the act charged or represent a unique scheme." Jaquez v. Flores (In re Estate of Jaquez), 99 Fed R. Evid. Serv. (Callaghan) (S.D.N.Y. 2016) (quoting Berkovich, 922 F.2d at 1022). Prior evidence of complaints can be used to show intent when the incidents are similar and involve complainants who are similarly situated, such as persons of the same race. See, e.g., Lewis v. City of Albany Police Dept., 547 F.Supp.2d 191, 200 (N.D.N.Y. 2008) (prior complaints were "strikingly similar" in that they all involved complaints of officers using "excessive force upon the head of handcuffed African-American suspects" and to show the officers "motivation and intent with regard to the use of force against" the plaintiff).

Defendants offer summaries of seven separate Internal Affairs Reports which they claim should be precluded. Plaintiff does not address these particular Reports, offering instead a general argument that such reports should be admitted. Plaintiff also does not provide the Court with any definite information on what reports he may tend to introduce.

The Court notes that the summaries that Defendant provides of the Reports in question indicate that the evidence is likely "propensity" evidence–meant to show that Defendant Miller has a pattern of using excessive force and engaging in misconduct while on duty. Defendants describe one of the Reports as concerning discipline Officer

6

Miller received after backing his police car into another police vehicle. Another reports discipline that Miller received for failing to show at court hearings. Other reports concern claims of excessive force Officer Miller allegedly used in arresting suspects. None of those reports involved the execution of a search warrant or shooting of a person with a gun. Such evidence would not be admissible, since none of these Reports describe actions or events strikingly similar to those in this case. Plaintiff points to no "intent" that these reports reveal.

Of course, the Plaintiff would have to seek to introduce any such reports. Nothing before the Court indicates any particular reports which the Plaintiff may seek to introduce, and the Court cannot exclude evidence based solely on the Defendants' representations about what may be introduced. The Court will therefore deny the motion with leave to renew at an appropriate time during the trial. The Court will apply the above principles in determining whether to admit any such evidence. The question of whether such evidence could be introduced for another purpose, such as impeachment during cross examination, is of course another question and one that the Court will take up at an appropriate time.

### ii. Police Regulations Regarding Use of Force

Defendants argue that any police regulations regarding use of force are irrelevant to the questions before the jury and should be precluded. The Fourth Amendment inquiry here, Defendants contend, is whether the officer's actions were objectively reasonable under the circumstances, and the regulations do not address that issue.

Excessive force claims brought pursuant to the Fourth Amendment "'are properly

analyzed under the Fourth Amendment's 'objective reasonableness' standard.'" Shamir v. City of New York, 804 F.3d 553, 556 (2d Cir. 2015) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)).  Using "excessive force renders a seizure of the person unreasonable and for that reason violates the Fourth Amendment." Id.  To decide whether the force was reasonable, the finder of fact should pay "'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Soares v. Connecticut, 8 F.3d 917, 921 (2d Cir. 1993) (quoting Graham, 490 U.S. at 396).  This standard focuses on "'a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Brown v. City of New York, 798 F.3d 94, 100 (2d Cir. 2015) (quoting Graham, 490 U.S. at 397).

Federal Rule of Evidence 401 defines relevant evidence as evidence that "(a) . . . has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  FED. R. EVID. 401.  Relevant evidence is generally admissible.  FED. R. EVID. 402.  Defendants' argument here is that evidence of police procedures is irrelevant to Plaintiff's Fourth Amendment claims, since the standard for deciding such claims is one based on the reasonableness of the Defendants' conduct under the facts and circumstances of the case, not on whether the Defendant violated any particular rule or procedure.  Courts have found that "local police enforcement practices generally have no bearing on the reasonableness of a search or seizure because such practices, 'even if they could be practicably assessed by a judge, vary from place to place and from time to time.'"

United States v. Wilson, 699 F.3d 235, 243 (2d Cir. 2012) (quoting Whren v. United States, 517 U.S. 806, 815 (1996)). Further, the Fourth Amendment's protections are constant, whatever rules states put in place to direct officers; "'while States are free to regulate . . . arrests however they desire, state restrictions do not alter the Fourth Amendment's protections.'" Id. (quoting Virginia v. Moore, 553 U.S. 164, 172 (2008)). Thus, "the Fourth Amendment does not generally incorporate local statutory or regulatory restrictions on seizures and . . . the violation of such restrictions will not generally affect the constitutionality of a seizure supported by probable cause." Id.

The Court agrees that evidence that Defendant Miller violated police regulations or standard operating procedure is irrelevant to the question of whether Miller used excessive force against the Plaintiff. To the degree that Plaintiff seeks to introduce such evidence for that purpose, the Court will exclude it. Of course, Defendants seek to preclude the evidence only on these grounds, and Plaintiff may introduce such evidence for any other relevant purpose. The Court notes that the jury instructions will in any case clarify the Fourth Amendment issue.

### iii. Potential Indemnification

Next, Defendants seek to preclude any evidence that the City of Binghamton may indemnify any officers found liable, and to prevent Plaintiff's counsel from referencing any such indemnification during jury selection. Plaintiff responds by informing the Court of the rules for vicarious liability in New York.

The Court will grant the motion in this respect. Who may pay for any damages the jury may award in this case is irrelevant to the questions the jury must answer. See FED. R. EVID. 401, 402. The fact that the Defendant City may or may not cover

damages assigned to Defendant Miller will not make more or less likely some fact of consequence to the litigation, and would serve only to encourage the jury to confuse the issues and render a decision based on the financial condition of the parties, which is not material to this dispute. See FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Courts have concluded that evidence of indemnification is generally inadmissible as irrelevant. See, e.g., Anderson v Aparicio, 25 F.Supp.3d 303, 314 (E.D.N.Y. 2014); Jean-Laurent v. Hennesssy, 840 F.Supp.2d 529, 550 (E.D.N.Y. 2011) (precluding "any evidence that the City may indemnify the defendants under General Municipal Law."). At the same time, if a defendant testifies as to an inability to pay a damages awarded against him, courts have permitted plaintiff to introduce evidence of indemnification agreements. See Mathie v. Fries, 121 F.3d 808, 816 (2d Cir. 1997); Anderson, 25 F.Supp.3d at 314 (quoting Hogan v. City of New York, No. 04cv3298, 2008 U.S. Dist. LEXIS 3990, at *6 (E.D.N.Y. Jan. 18, 2008) ("[I]ndemnification evidence is a shield to rebut claims of limited resources by officers.")). As such, the motion will be granted with respect to plaintiff's introduction of any evidence of indemnification during his case-in-chief. If, however, Defendants assert an inability to pay a damages award, Plaintiff may introduce rebuttal evidence of indemnification.

### iv. Specific Dollar Amount for Pain and Suffering Damages

Defendants next seek to preclude Plaintiff from naming a specific dollar amount to compensate him for his pain and suffering. They argue that the jury would be

encouraged by a mistaken belief that a particular dollar amount was supported by some legal authority or precedent.

In the Second Circuit, the decision of whether to permit an attorney to argue for a specific amount of pain-and-suffering damages "is best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." <u>Lightfoot v. Union Carbide Corp.</u>, 110 F.3d 898, 912 (2d Cir. 1997). At the same time, "specifying target amounts for the jury to award is disfavored. Such suggestions anchor the jurors' expectations of a fair award at the place set by counsel, rather than by the evidence." <u>Consorti v. Armstrong World Indus.</u>, 72 F.3d 1003, 1016 (2d. Cir. 1995).

The Court will grant the motion in this respect. The Court is confident that the instructions provided the jurors will enable them to assess the appropriate amount of damages for pain and suffering based on the appropriate legal principles. A suggestion of a specific amount would be both contrary to the nature of the instructions and could lead the jury to make its decision based not on the evidence but upon a range suggested by the attorneys. Plaintiff may of course suggest a specific amount of damages for other types of damages.

### iv. Precluding Lay Witnesses

Defendants seek to preclude the testimony of a number of the persons on Plaintiff's pre-trial witness list. They contend that these witnesses can offer no relevant testimony, and that any testimony they provide will only serve to confuse the issues and unfairly prejudice the case. The Court will address each witness in turn.

### a. Chief Joseph Zikuski

Defendants argue that Binghamton Police Chief Joseph Zikuski should be precluded from testifying. They argue that he has no personal knowledge regarding Plaintiff's remaining claims, as he was not on the scene of the incident until after Plaintiff was already transported to the hospital. Plaintiff responds that Chief Zikuski has knowledge of police department operations, SWAT team practices, and procedures that could and should have been followed on that day. He also served as spokesperson for the Department after the incident and participated in the investigation.

The Court will deny the motion in this respect. Plaintiff has asserted that Chief Zikuski has information relevant to a variety of his claims, and precluding him from testifying altogether because police procedures are not relevant to Plaintiff's Fourth Amendment claim is to narrow the issues in the case too much. Moreover, the Court cannot know at this point the scope of the parties' questioning of the Chief, and precluding of any testimony is premature. Defendants may of course challenge the relevancy of any testimony at trial.

### b.  Lt. Larry Hendrickson

Defendants also seek to preclude the testimony of Lt. Larry Hendrickson. Hendrickson usually commands the SWAT team, but was on vacation on the day of the incident. He thus, Defendants argue, has no relevant testimony to share with the jury. Plaintiff responds that Lt. Hendrickson has relevant information on SWAT team procedures and practices.

The Court will deny the motion with respect to Lt. Hendrickson as well. While the Court recognizes that Lt. Hendrickson's testimony about procedures may be irrelevant to the Fourth Amendment claim, the Court is not convinced that he is incapable of

offering any relevant testimony on any of the claims in the lawsuit. Moreover, the Court cannot at this point predict exactly what testimony Hendrickson will give. Defendants may of course raise additional objections to particular testimony at the time of trial.

### c. Investigator Michelle Stebbins

Defendants insist that Investigator Stebbins, who was in charge of the Binghamton Police Department's Identification Unit at the time in question, has no relevant testimony to offer. Investigator Stebbins arrived at the scene after Plaintiff was transported to the hospital and did not witness the events in question. Defendants admit, however, that Stebbins photographed and drew diagrams of the scene and collected physical evidence. Defendants are willing to stipulate to any of the evidence she collected and any diagrams she drew. As any failure-to-investigate claim has been dismissed, she has no relevant information to offer.

The Court will deny the motion with respect to Investigator Stebbins as well. The condition of the scene is a question in this litigation, and Stebbins investigated it. The Court cannot conclude that she has no potentially relevant information. Defendants may of course raise additional and appropriate objections to particular testimony at the time of trial.

### iv. Expert Witnesses

Defendants seek to exclude the testimony of Plaintiff's expert witnesses on various grounds. The Court will address them in turn.

### a. Expert Witness Standard

Federal Rule of Evidence 702 provides that:

 [a] witness who is qualified as an expert by knowledge, skill, experience,

training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.  The role of the trial court in determining the admissibility of expert testimony is to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  Daubert v. Merrell Dow Pharms., 509 U.S. 579, 589 (1993). Thus, "[u]nder Daubert, 'the district court functions as the gatekeeper for expert testimony[.]'" Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)).  These gatekeeping functions "appl[y] not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999).  Courts are to flexibly apply a series of factors in making this determination, including: "[w]hether a 'theory or technique . . . can be (and has been) tested' . . . [w]hether it has been subjected to peer review and publication'; . . . [w]hether, in respect to a particular technique, there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation'; and [w]hether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" Id. at 149-150 (quoting Daubert, 509 U.S. at 592-94).

### b.  Gene Maloney

Defendants seek to preclude the testimony of Plaintiff's expert in police procedures, Gene Maloney.  They do not challenge his qualifications, but argue that his

14

methodology is unreliable and unlikely to help the trier of fact.

Defendants' arguments do not address the methods Maloney used in constructing his report, but instead quarrel with his conclusions. Defendants offer a conclusory statement that Mahoney's "testimony indicates that he has not tested his theories, has engaged in rank speculation, has not be[en] subjected to peer review, and lacks conclusions relevant to the remaining claims." The Court finds Maloney's methodology adequate to the type of questions he attempts to answer and to the field in which his expertise lies–police procedure, tactics and operations. Such investigations are not likely to be published in peer-reviewed journals and are not subject to randomized testing. Instead, Maloney's report necessarily compares the actions of the Binghamton Police and Officer Miller to the actions and methods of other police departments, and evaluates the events in light of his training. Under the circumstances, such methodology is appropriate. Defendants' arguments with the methodology are related more to Mahoney's conclusions. The persuasiveness of his conclusions is an issue for the jury.

Defendants also contend that Maloney should be precluded from testifying because his opinions on proper police methods and practices are unlikely to help the trier of fact. In part, Defendants contend that these opinions are inadmissible "because they are based on pure speculation and surmise." They Court rejects this argument, which is simply a quarrel with the opinions and an attack on their persuasiveness, not an argument for how they will not aid the trier of fact. Defendants also contend that, because issues of police practice are not relevant to Plaintiff's Excessive Force claim, Maloney's testimony will not aid the trier of fact. The Court agrees that, to the extent

the testimony is designed for that purpose, it would not be relevant. Given that Plaintiff has state-law negligence claims, however, the Court will permit the testimony for the purpose of identifying negligence on Defendant Miller's part, to the extent that Maloney can offer such testimony. Defendants may of course renew their objections as the proof comes in at trial.

### c. Dr. Scott LaPoint

Defendants next seek to exclude the testimony of Dr. Scott LaPoint, who Plaintiff offers as an expert who can offer "forensic testimony with respect to: trajectory, range of fire; medial conditions/injuries, their causation, their significance, consequences, permanence, manifestations and affect on function." <u>See</u> Plaintiff's Disclosure of Expert Witness, Exh. V to Plaintiff's Response to Defendants' Motion for Summary Judgment, dkt. # 89-24. Defendants argue that Dr. LaPoint should be precluded from testifying on trajectory/ballistic analysis because he has no qualifications in that field, and because his methodology is unreliable.

Dr. LaPoint's curriculum vitae reveals that he is licensed medical doctor with a specialty in pathology. <u>See</u> dkt. # 89-24. He is board certified in anatomic and clinical pathology. <u>Id.</u> Dr. LaPoint is currently the laboratory of director several entities in and around Erie County, New York, including the Erie County Public Health Laboratory, the Erie County STD Clinic Laboratory, the Niagara County STD Clinic Laboratory, and West Ridge Obstetrics and Gynecology in Webster, New York. <u>Id.</u> Dr. LaPoint has also served as a forensic pathology consultant and contractor for the Erie County Medical Examiner's Office since 2011. <u>Id.</u> He has also been a clinical instructor and professor at the University of Rochester Medical Center since 2002. <u>Id.</u> Since 2001,

Dr. LaPoint has served as an anatomic and clinical pathologist at various hospitals in New York.  Id.  LaPoint's past work experience includes ten years as a deputy medical examiner for the Monroe County Medical Examiner's Office in Rochester, New York.  Id.  LaPoint lists several publications.  Id.  None of them address trajectory or ballistics analysis.  Id.  Dr. LaPoint also lists numerous New York State "Certificate of Qualification" categories, including bacteriology, clinical chemistry, endocrinology, hematology, mycobacteriology, mycology, parasitology, and transfusion services.  Dr. LaPoint's C.V. does not list any expertise in ballistics or gunshot residue.

The Court finds the papers and briefing on this issue are insufficient to determine whether Dr. LaPoint is qualified to testify on the issue of trajectory and ballistic analysis in this case.  The Court notes that Dr. LaPoint's primary expertise seems to be in pathology, "[t]he branch of medical study that examines the origins, symptoms, and nature of diseases."  Bryan A. Gardner, ed., BLACK'S LAW DICTIONARY (8th Ed., 2004).  Such training and knowledge hardly comports with knowledge of ballistics and bullet trajectory.  None of his publications address this issue.  At the same time, however, Dr. LaPoint has also served as a medical examiner and has testified in a large number of criminal cases.  He has worked as a consulting forensics analyst.  As such, his resume hints that he has sufficient experience and training to render an expert opinion on the issues his report addresses.  The Court will therefore reserve ruling on the admissibility of Dr. LaPoint's testimony until after the Court conducts a Daubert hearing outside the presence of the jury.

Defendants also seek to preclude Dr. LaPoint's testimony as a rebuttal witness.  They argue that Dr. LaPoint's testimony concerns issues central to the case–where

Plaintiff was when Defendant Miller shot him—and his testimony should be introduced only as part of Plaintiff's case-in-chief.   Plaintiff did not name Dr. LaPoint during his initial disclosures.  Since he is not properly a rebuttal witness, he should not be permitted to testify during the rebuttal portion of the case.[1]  As this issue can be decided as a matter of law, the Court will address it here.

Defendants argue that Dr. LaPoint must testify in the case in chief.  They cite to Braun v. Lorillard, Inc., 84 F.3d 230 (7th Cir. 1996).  That case involved claims that the defendant knowingly endangered plaintiffs by selling cigarettes with filters that contained dangerous amounts of asbestos.  Plaintiffs failed to disclose a fact witness who could testify that the defendant tobacco company had approached a company he worked for years before about manufacturing a safer filter on their final pre-trial list.  Id. at 236.  The trial judge precluded plaintiffs from calling this witness during their case in chief; plaintiffs had long been aware of this witness and his potential testimony and did nothing to interview him or disclose his testimony until briefly before trial.  Id.  The Court of Appeals saw no abuse in discretion in precluding the witnesses testimony during the Plaintiff's case.  Id. at 237.  The court also upheld the trial judge's decision to preclude the witness from testifying as a rebuttal witness, finding that "[t]he plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief."  Id. at 237.  To do otherwise, the court noted, would permit the

---

[1]The Court notes that Defendants do not move to preclude Dr. LaPoint from testifying in Plaintiff's case-in-chief, despite Plaintiff's failure to name him in his initial disclosures.  Defendants disclosed Dr. LaPoint's report to Defendants on October 14, 2015.

plaintiff to "reverse the order of proof, in effect requiring the defendants to put in their evidence before the plaintiff put in his." Id. Defendants contend that this Seventh Circuit holding requires the Defendants to call Dr. LaPoint in their case-in-chief.

Another Seventh Circuit case cited by the Defendants, however, offers a fuller explanation of the purpose of rebuttal witnesses. In Peals v. Terre Haute Police Dep't, 535 F.3d 621, 630 (7th Cir. 2008), the court pointed out that "'[t]he proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party.'" (quoting United States v. Grintjes, 237 F.3d 876, 879 (7th Cir. 2001)). Rebuttal evidence that does not seek "'to contradict, impeach or defuse the impact of the evidence offered by an adverse party'" is not proper. Id. (quoting Grintjes, 237 F.3d at 879).

Defendants seem to suggest that the fact that the evidence LaPoint offers would be relevant towards determining where Plaintiff was when Miller shot him means that such evidence is not proper for rebuttal. Of course, if the evidence were not relevant, it would not be admissible whether brought in the case-in-chief or in rebuttal. In any case, Plaintiff can choose not to call Dr. LaPoint as a witness in the case-in-chief. If expert evidence about where Plaintiff was at the moment Miller shot him is dispositive and Plaintiff fails to provide an expert witness on this issue, Defendants can certainly move for judgment as a matter of law at the close of Plaintiff's case-in-chief. If Defendants are correct, then the issue of whether Dr. LaPoint can testify as a rebuttal witness will become moot. Whether Dr. LaPoint can testify as a rebuttal witness will depend on the case that Defendants offer, and a decision on whether he can testify to rebut Defendants' claims is at this point premature.

The Court will therefore reserve on that portion of the motion as well.

**B.      Plaintiff's Motions**

**i.      Motion to Preclude Testimony of Jeffrey Lyness**

Plaintiff moves to preclude portions of the Testimony of Dr. Jeffrey Lyness, an expert offered by the Defendants.  Plaintiff seeks to exclude Dr. Lyness' opinions on Plaintiff's alleged malingering, lies and exaggerations.  Plaintiff insists that Dr. Lyness lacks qualifications to testify on PTSD, as he is a specialist in geriatrics.  He further contends that such testimony amounts to opinions on credibility, an issue reserved to the jury.  Moreover, his opinions in those areas amount to mere speculation and are not based on any scientific data.  In the alternative, Plaintiff requests a Daubert hearing to address these issues.

The Court will deny the motion.  Dr. Lyness' C.V., attached to Defendants' response to Plaintiff's motion, indicates that Dr. Lyness currently serves as Senior Associate Dean for Academic Affairs and Professor of Psychiatry and Neurology at the University of Rochester Medical Center.  See dkt. # 105-1.  Dr. Lyness undertook a postdoctoral fellowship and residency in Psychiatry at Yale University after graduating from the University of Rochester Medical School.  Id.  He is certified by the American Board of Psychiatry and Neurology in both psychiatry and geriatric psychiatry.  Id. Since 2006, he has been a full professor of Psychiatry at the University of Rochester. Id.  While Plaintiff is correct that some of Dr. Lyness' experience has been in geriatric psychiatry, Dr. Lyness has also served as an attending psychiatrist at several hospitals. Id.  He is a member of the Genesee Valley District Branch of the American Psychiatric Association and has served in national psychiatric bodies as well.  Id.  Indeed, in 2010

Dr. Lyness began a 3-year term as a member of the American Psychiatric Association's Council on Adult Psychiatry. Id. While many of Dr. Lyness' numerous presentations and research grants have addressed psychiatric care for the elderly, he has also addressed mental illness among patients of all ages. Id.

Dr. Lyness' C.V. reveals that he possesses the relevant scientific training to testify as an expert on Plaintiff's psychological state, an issue on which Plaintiff seeks damages. See Kumho Tire, 526 U.S. at 141. Dr. Lyness proposes to testify on the psychological impact of the shooting on the Plaintiff, and his medical training, research speciality, and professional experience all equip him to make such an evaluation. Dr. Lyness evaluated Plaintiff as part of the discovery in the case, and his report offers his conclusions about Plaintiff's alleged illnesses and symptoms. Thus, Dr. Lyness's testimony will assist the trier of fact in determining a question of fact material to the litigation. The Court will therefore permit the testimony. Plaintiff's complaints about Dr. Lyness's particular conclusions do not address the expert's qualifications, but represent argument about the persuasiveness of his testimony. Those complaints are not a basis to prevent to Dr. Lyness from testifying. The Court will therefore deny the motion.

Plaintiff also argues that Dr. Lyness' testimony will be used by the Defendants as a conduit to introduce improper character evidence. The Court finds this portion of the motion premature, as the Court cannot know how the Defendants will attempt to use his testimony. The Court will deny that portion of the motion with leave to renew at an appropriate time during trial.

### ii. Evidence in Hospital Records

Plaintiff next seeks to preclude testimony concerning references in the medical

records to various items and statements.  He seeks to preclude testimony or redact portions of the record that reference:  gunpowder on him and/or his clothing; testimony from Defense expert Dr. Terzian on the presence of gunshot residue on Plaintiff's skin; foul language used by the Plaintiff at the hospital; and evidence of plaintiff's marijuana use.  To the extent that Plaintiff actually makes arguments in his brief, he contends that statements in his medical records–though he does not point to any particular ones in the brief but instead in a detailed affidavit–are hearsay not subject to any exceptions.

This motion concerns the exclusion of alleged hearsay statements.  The Federal Rules of Evidence define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers for the truth of the matter asserted in the statement."  FED. R. EVID. 801(c).  Hearsay not excepted by a federal statute, the Federal Rules of Evidence, or other rules is inadmissible.  FED. R. EVID. 802.  Plaintiff points to Rule 803(4), which provides an exception for statements made for medical diagnosis or treatment, and which are used to describe "medical history; part or present symptoms or sensations; their inception, or their general cause," and argues that none of the statements he seeks to exclude fit this rule.  FED. R. EVID. 803(4)(B).

First, Plaintiff points to an entry in the hospital records by Mark J. Brennan, DO, who performed an exploratory laparotomy on Plaintiff after his injury.  The record reports that "[w]e opened the abdominal cavity and found that there was a pretty-good sized hole with some blast injury and gunpowder around the area."  See dkt. # 103-2.  Plaintiff seeks to exclude any reference to "gunpowder around the area."  Plaintiff contends that Brennan lacks the knowledge and training to identify the gunpowder and

his statement is "speculative and unrelated to diagnosis and treatment of the damaged spleen" and other internal organs punctured by the bullet. The statement, moreover, would only confuse the jury and its prejudicial effect outweighs is probative value. Defendants respond that the note is germane to medical treatment and diagnosis. Plaintiff ties this portion of the motion with another part of the motion, which seeks to preclude Defendants' expert, Dr. Terzian, from testifying about the presence of gunshot residue on the Plaintiff's skin. Defendants term this an "extension" of Plaintiff's earlier argument regarding Dr. Brennan, since much of Dr. Terzian's expert testimony on gunshot wounds grew out of his examination of Dr. Brennan's records.

It is clear to the Court from the parties' arguments that resolution of this issue will depend on how the parties attempt to use the testimony at trial. Whether Dr. Terzian can testify on certain issues related to gunshot residue depends in part on how the parties attempt to use Dr. Brennan's records, and the Plaintiff's briefing leaves unclear how such testimony might be introduced and by whom. The Court will therefore reserve on this issue until an appropriate time at trial.

Plaintiff seeks to preclude introduction of any foul language allegedly used by the Plaintiff and recorded in the medical records. Defendants respond that the admissibility of such evidence will depend on the case Plaintiff makes at trial, and whether he puts in question particular aspects of his character. The Court agrees with the Defendant that the admissibility of such evidence is best determined during the course of the trial. The Court will therefore reserve on this issue until the appropriate time at trial.

Plaintiff next seeks to exclude from the medical records any mention of marijuana use by him. The medical records, Plaintiff's deposition, and the expert report

of Dr. Layness all indicate the Plaintiff has used marijuana.  Plaintiff contends that such evidence is irrelevant and unduly prejudicial.

The Court agrees that marijuana use in general is irrelevant to the issue of whether Defendants used excessive force or violated Plaintiff's rights in some other way on the date in question.  At the same time, Plaintiff's marijuana use may to some degree be relevant to other aspects of the case, such as damages or Plaintiff's ability to perceive or recall the events in question, and the admissibility of such evidence will depend on events and arguments made at trial.  The Court will therefore reserve on this issue until an appropriate time at trial.

### iii.    Omnibus Motion

Plaintiff also filed an omnibus motion in limine that addresses a plethora of issues.  The Court will address each in turn.

### a.  Apology

Plaintiff seeks to preclude Defendants from offering any apology for Plaintiff's injuries.  Defendants respond that they do not intent to offer an apology.  They seek to preserve their right, however, to respond if Plaintiff raises the issue of an apology at trial.

The Court will deny the motion as moot at this point, recognizing that the issue may be renewed based on the testimony at trial.

### b.  Preclusion of Testimony About Commendations or Awards

Plaintiff seeks to preclude any testimony concerning commendations or award earned by the police officer witnesses as impermissible character evidence under Federal Rule of Evidence 404.  Defendants acknowledge that they may not introduce

such evidence for proving good character and actions in conformity therewith, but argue that such evidence is admissible for other purposes. Evidence and argument at trial may provide grounds for admission of the evidence.

The Court will reserve ruling on this evidence until trial. The admissibility of such evidence is specific to context of its attempted introduction and must be deferred until the time of trial.

### c. Officers Wearing Medals on their Uniforms

Plaintiff also seeks to preclude the officers who testify from wearing medals on their uniforms. Plaintiff concedes that the officers may wear their uniforms at trial.

The Court will grant the motion in this respect. The Court finds that, while the jury would likely not be able to recognize the specific reasons for the award of the medals, an officer wearing a brace of medals on his uniform while testifying could have the effect of encouraging the jury to make a decision based on the officer's appearance and signified reputation, rather than on the facts of the case. In that sense, wearing the medals would be unduly prejudicial and precluded by Federal Rule of Evidence 403. Any officers who testify at trial may wear standard police uniforms, but not any medals or awards. See Case v. Town of Cicero, No. 10c7392, 2013 U.S. Dist. LEXIS 148656 at *13-14 (N.D. Ill. Oct. 16, 2013) ("Ordinarily, police officers are permitted to wear uniforms at trial, though medals are potentially prejudicial to the adverse party. The officers in this case may wear standard police uniforms [but] . . . they may not appear in bullet-proof vests or other protective gear that may have been worn during the events of this case. The officers may not wear any medals or awards. They will be permitted to wear insignia that reflect their rank within the police force.") (internal citations omitted).

### d. Risks of Police Work

Plaintiff seeks to prevent testimony from officers concerning the risks of police work, such as statements that "police officers risk their lives every day." He contends that such statements are irrelevant and unduly prejudicial.

The Court will reserve ruling on this motion until an appropriate time at trial. The Court recognizes that the issues in this case, which concern in part whether shooting the defendant was reasonable from the perspective of an ordinary police officer in Defendant Miller's position, may necessarily discuss the dangers that an officer in his position might face. At the same time, testimony elicited solely to illicit the sympathy of jurors about the difficult task officers face could encourage jurors to make a decision based on something other than the facts of the case. This motion is therefore best decided at trial.

### e. Budgetary Constraints

Plaintiff next seeks to preclude any argument or testimony that the policies and procedures of the Binghamton Police Department are a result of the City's limited budget. Plaintiff argues that Police cannot excuse their own negligence or constitutional violation on a lack of funds.

The Court will likewise reserve on this motion until time of trial. Whether Defendants could introduce evidence on the budgetary constraints faced by the City will depend on the testimony at trial, including Plaintiff's arguments. If Plaintiff argues that Defendants violated the standard of care by negligence by failing to engage in a million-dollar surveillance operation before executing the warrant, for instance, Defendants may have cause to argue that budgetary constraints make such action impossible.

### f.  Taxpayer Liability or Higher Taxes

Plaintiff seeks to exclude any testimony or evidence or argument that taxpayers will have to pay for any damages assigned to Defendants.  Defendants respond that they do not intend to introduce such information but ask the Court to reserve on this issue until trial.

For the reasons explained above with respect to the issue of indemnity, argument about how damages are paid is not relevant to the issues before the Jury. The Court will therefore grant the motion with respect to Defendants introducing any evidence, testimony, or argument about the financial consequences of a Plaintiff's verdict for the City or taxpayers in the City.

### g.  Plaintiff's Criminal History

Plaintiff seeks to preclude testimony from the Defendants on his criminal history.

Federal Rules of Evidence 609 provides in relevant part that:

> (a)(1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>
>> (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
>> . . .
>>
>> (B) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving–or the witness's admitting–a dishonest act or false statement.
>
> (b) [if more than ten years have passed since conviction or release from jail the evidence is admissible if]
>> (1) the probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect[.]

FED. R. EVID. 609.  The rule "gives broad discretion to the trial judge" and the court is to

consider "many factors[.]" <u>United States v. Ortiz</u>, 553 F.2d 782, 784 (2d Cir. 1977).

"Prime among them is whether the crime, by its nature, is probative of a lack of

veracity." <u>Id.</u> "Though in some cases felony drug convictions may bear on a witness's

credibility, a court must examine the facts involved in the convictions to determine

whether the prior convictions are probative as to the witness's truthfulness." <u>Nibbs v.</u>

<u>Goulart</u>, 822 F.Supp.2d 239, 343 (S.D.N.Y. 2011)

Plaintiff admits that he was convicted in cases involving controlled substances in

2004 and 1999, and contends that other criminal conduct may also be raised by

Defendants. Defendants provide more detail on the convictions.

### 1. Prior Convictions Older than 10 Years Old

First, Defendants point to a 1996 conviction for criminal possession of a

controlled substance in Connecticut. Plaintiff was sentenced to 32 months and

released from prison in 1999. Defendants admit that this conviction is older than ten

years, but argue that "should Plaintiff take the stand its impeachment value would be

high." Defendants do not attempt to explain why, and do not point to any facts and

circumstances of that arrest. The Court will grant the motion with respect to this

conviction, as Defendants have not pointed to any probative value of the arrest on

Plaintiff's credibility, other than to claim he could be impeached with it. The Court finds

that their probative value does not substantially outweigh the prejudicial effect of

bringing up a 17-year-old drug arrest. The purpose of its introduction would only be to

suggest that Plaintiff is a criminal and therefore undeserving of consideration by the

jury.

Defendants argue that a second arrest, which occurred in 2004 and resulted in a

prison sentence that terminated in March, 2006 should be considered under the second part of the rule, because his release occurred barely more than 10 years ago and "[b]ut for the number of extension of discovery deadlines and the necessary rescheduling of this trial," the conviction would have fallen within the 10-year window. The Court cannot accept this position, as the Rule is clear that subdivision (b) applies "if more than 10 years have passed since the witness's conviction or release from confinement" for the offense, whichever is later. More than ten years have passed.

Defendants assert that the second conviction, for criminal possession of a controlled substance, should be admissible because at the time of his arrest he gave an alias, which points to a lack of credibility. No charges were filed as a result of that allegedly false statement. The Court finds that the facts and circumstances of the arrest do not make the probative value of the conviction substantially outweigh the prejudicial effect. The only conceivable means by which the conviction's probative value might outweigh its prejudicial effect would be if the conviction somehow involved use of a false name. That might demonstrate a tendency to lie. The single conviction in this case, however, was not for using an alias, but for having a controlled substance. In the end, the Defendant did not admit to any charges on the false-name charge, and admitting the conviction would thus serve only to encourage the jury to find against the Plaintiff because of his criminal history. The motion will be granted in this respect as well.

## 2. Newer Involvement with Police

Defendants also seek to introduce evidence of two traffic stops. One occurred in May of 2012, when Defendants contend "Plaintiff was ticketed for operating a vehicle

without a valid inspection and operating a vehicle without emissions inspection." Plaintiff pled guilty. In April, 2013, Plaintiff was ticketed for driving 20 miles over the speed limit and driving with revoked or suspended privileges. Sometime in 2013, Defendants relate that Plaintiff was a passenger in a stopped vehicle and found to have 22 hydrocodone tables and more than $5000 in suspicious currency. Defendants admit that any charges against Plaintiff were dismissed, though plaintiff forfeited the property in a civil proceeding.

Evidence of this criminal involvement is clearly inadmissible under Rule 609(a)(1)(B). Defendants do not even attempt to assert that traffic tickets are punishable by more than a year in jail (they don't even cite the jurisdiction where the second ticketing occurred), and they do not cite anything in either statute which would establish that an element of a traffic ticket requires demonstrating a dishonest act or a false statement. The third incident does not even involve a conviction. As such, Plaintiff's motion will be granted in this respect.

Of course, Defendants may attempt to introduce the evidence of the conviction for some other valid purpose if one arises at trial.

### h.    Plaintiff's Financial Status

Plaintiff seeks to preclude any testimony on Plaintiff's employment or financial status, such as whether he has received government aid. Defendants respond that they should be able to question Plaintiff on these issues if his testimony makes them relevant.

The Court finds that the relevancy of Plaintiff's financial and employment status will depend on the testimony at trial. The Court will reserve ruling the motion until an

appropriate time at trial.

### i.     Collateral Sources

Plaintiff next argues that Defendants should be precluded from introducing any evidence of insurance payments, public aid or other collateral-source payments for his medical bills.  Defendant agrees that such evidence may not be admitted to mitigate damages, but that it may be admitted for other purposes, particularly if the Plaintiff puts his financial status at issue.

The Supreme Court has noted that the ability to receive "collateral social insurance benefits involves a substantial likelihood of prejudicial impact" on a plaintiff seeking to recover damages for disability.  Eichel v. New York Cent. R. Co., 375 U.S. 253, 255 (1963).  Courts have precluded evidence of collateral benefits as unduly prejudicial.  See Steinherr v. CSX Transp. Inc., 2011 U.S. Dist. LEXIS 141114 at *5 (N.Y.N.Y. ) (citing Sheehy v. S. Pac. Transp. Co., 631 F.2d 649 (9th Cir. 1980); Finley v. Nat'l R.R. Passenger Corp., 1 F.Supp.2d 440, 443 (E.D. Penn. 1998); Edsall v. CSX Transp., Inc., 2008 U.S. Dist. LEXIS 6247, 2008 WL 244344, at *2 (N.D. Ind. 2008); Davis v. CSX Transp., Inc., 2008 U.S. Dist. LEXIS 108204, 2008 WL 2117151, at *2 (E.D. Tenn. 2008); Prater v. Consol. Rail. Corp., 272 F.Supp.2d 706, 716 (N.D. Ohio 2003).  At the same time, however, courts have found that evidence of collateral benefits could be admitted for other purposes, particularly if the plaintiff puts his financial status at issue.  Steinherr, 2011 U.S. Dist. LEXIS 141114, at *8.

The Court will adhere to that practice here.  The Court will grant the motion with respect to Defendants introducing collateral sources to prove that Plaintiff is not entitled to recover for his losses from his injuries.  Defendants may seek to introduce such

evidence, however, if Plaintiff puts his financial condition at issue, particularly if Defendants have evidence that collateral sources have paid medical bills that Plaintiff claims he owes.

### j.      "Anyone Can File a Lawsuit"

Plaintiff seeks to preclude Defendants from arguing or implying that Plaintiff filed his lawsuit for frivolous reasons, simply because anyone can get access to the Courts. Defendants respond that they agree that argument about past lawsuits and litigiousness is generally inadmissible.  They contend that there is no evidence to be admitted of past lawsuits, and then contend that "the motion should be denied as moot."  Defendants appear to acknowledge that they do not intend to raise the issue and could not even if they intended to.

The Court will grant the motion as unopposed.  The parties appear to agree on the legal principles involved, and the Defendants appear to assert that they will not raise the issue.

### k.      Financial Motivation

Plaintiff argues that Defendants should be precluded from introducing evidence or argument alleging that Plaintiff's motive for filing the lawsuit was a purely pecuniary one.  Defendants ask the Court to reserve on the motion, as evidence at trial may make such argument appropriate.

The Court agrees with the Defendants and will reserve on ruling.  Evidence at trial may make such argument admissible.  Plaintiff may raise the issue again at an appropriate time during trial.

### l.      Items in Plaintiff's Possession When he Was Shot

Plaintiff had in his possession approximately $1700 cash, a blackberry smart phone, and his identification at the time Officer Miller shot him. Plaintiff seeks to preclude introduction of these items into evidence, arguing that the items are irrelevant and will serve only to imply to the jury that Plaintiff was involved in some sort of criminal activity, leading to undue prejudice. Defendants argue that the admissibility of the evidence depends on other testimony at trial.

The Court will reserve on this motion until an appropriate time at trial. Plaintiff's evidence and testimony at trial may raise an issue that makes the evidence admissible. Plaintiff may raise the issue again at an appropriate point.

### m. Use of Alcohol, Marijuana, and other non-Prescription Drugs

Plaintiff seeks to preclude admission of any evidence, testimony or argument that he or any other witness has used drugs. He argues that evidence of alcohol, marijuana, or other non-prescribed drugs by Plaintiff or any other witness would have little probative value and only a prejudicial effect. He seeks to exclude any mention of his use or possession of alcohol or drugs either prior to or after the date in question. Defendants respond that there is evidence that Plaintiff used marijuana before the incident, and that his testimony may open him to questions about drug use at other times.

For the reasons stated with reference to the mention of drugs in the medical records, the Court will reserve ruling on this issue until an appropriate point at trial.

### n. Plaintiff's Marital/Paternal Status

Plaintiff seeks to preclude evidence or testimony about his marital and/or

parental status.  Defendants assert that they do not intend to raise this issue unless Plaintiff "opens the door" by misrepresenting facts about his status.

The Court will grant motion as moot with leave to renew if the issue arises during the trial.

### o.      Failure to Mitigate Defense

Plaintiff contends that Defendants should be precluded from raising the affirmative defense that he has failed to mitigate his damages.  He contends that expert testimony is necessary to prove such a defense.  Defendants respond that Plaintiff's own medical records and testimony from his doctors indicate that he has not mitigated his damages, and that argument to that respect is permitted.

Plaintiff is correct that "[i]n order to show a failure to mitigate damages evidence of the failure must first be admissible."  Pierce v. F.R. Tripler & Co., 955 F.2d 820, 826 (2d Cir. 1992).  Plaintiff's argument here goes to the weight of the evidence that shows he failed to mitigate his damages, not its admissibility.  Defendants contend they can prove that Defendant's failure to mitigate through his own physicians.  Plaintiff does not dispute the admissibility of this evidence.  The argument will therefore be denied with leave to renew at an appropriate time.

### p.      Preclusion of Criminal Records of Certain Witnesses

Plaintiff contends that Defendants intend to introduce evidence of the criminal histories of two potential witnesses, Michael Pride and Milagros Gonzalez.  He asserts that introduction of their criminal histories will unduly prejudice his case, causing jurors to associate him with criminals and to decide the case for the wrong reasons. Defendants respond that the purpose of introducing any evidence of Michael Pride's

criminal history would serve the purpose of establishing the facts and circumstances known by officers when they entered the apartment.

The Court will deny the motion in this respect. In terms of Plaintiff's excessive force claim, a central question is what the officers who entered the apartment knew about the persons residing there, as those facts and circumstances help explain what was reasonable under the circumstances. To the extent that Defendants seek to introduce the evidence for that purpose, the Court finds that its probative value outweighs its prejudicial effect. Likewise, Defendants do not argue that they seek to introduce any evidence of Milagros Gonzalez's criminal history. The motion will be granted as unopposed with respect to her. Plaintiff may renew the motion if Defendants seek to introduce the evidence for another purpose.

### q. Contraband Discovered at the Scene

Plaintiff seeks to preclude introduction of evidence that drugs or drug paraphernalia were recovered at the scene of the incident. Such evidence, he insists, is unduly prejudicial. Defendants respond that the warrant in question sought such items, and that testimony about the items in question would be admissible both to refute any claims to the contrary by Plaintiff and to establish the circumstances confronted by Officer Miller.

While the Court notes that evidence about contraband found after Officer Miller shot Plaintiff hardly qualifies as evidence to establish the facts and circumstances known to him at the time of the shooting, the Court agrees with the Defendants that such evidence could be relevant to dispute claims made by the Plaintiff about the scene when Miller shot him.

The Court will therefore reserve on the motion until an appropriate time at trial.

### r. Characterization of the Neighborhood as a "High Crime" Area

Plaintiff argues that Defendants should be precluded from referring to the neighborhood where the events in question occurred as a "high crime" area, a "drug" area, or a "gang" area. He contends that such evidence would be highly prejudicial and not probative of anything important to the case.

The Court disagrees that the nature of the area where officers executed the warrant is immaterial to the case. One question in this matter is whether a reasonable officer in Miller's position would have used the force he did. Testimony about the area in question would help establish the circumstances under which officers executed the warrant and thus would help resolve an important material fact. The motion will be denied in this respect.

### s. Testimony Concerning the Victoria Café

Plaintiff seeks to preclude testimony concerning the legal status of the Victoria Café, an apparently illegal club where Plaintiff and Michael Pride had visited the night before the incident in question. He argues that there is no evidence he knew of that status, and such status is irrelevant to the facts at issue in this case. Defendants contend that they do not intend to offer any testimony on this issue, but argue that the information may become useful depending on the testimony at trial.

The Court will grant the motion. The issue of the legal status of Victoria's Café is irrelevant to any fact of consequence to the litigation. No testimony indicates that Plaintiff knew of that status, or that officers used information about Victoria's Café in

preparing to execute the warrant.  Of course, if Plaintiff somehow opens the door to making such information relevant, Defendants may seek to introduce such evidence.

### t.      Use of Force Policies and Procedures

Plaintiff has informed the Court that he withdraws this portion of the motion.  The Court will therefore deny the motion as withdrawn.

### u.      Internal Affairs Findings/Determinations/Reviews

Plaintiff seek to preclude introduction or testimony about the City of Binghamton Police Department's internal review of the events in question.  They argue that they were conducted after the fact, and are self-serving, cumulative and serve only to bolster the Departments' claims about the event.  As any report was assembled after the fact, its probative value is minimal. Defendants respond that Plaintiff has failed to identify which document or documents the motion refers to, and thus they cannot fully respond.

The Court finds that the Plaintiff has failed to identify specific portions of the investigation that may be inadmissible, and that at this point in the litigation the Court cannot know whether circumstances would dictate that the report could be used to impeach a witness, question a witness, or serve some other legitimate purpose.  The Court cannot find that the report could never be admissible.  Given this status, the Court will reserve on this motion until an appropriate time at trial.

### III.    Conclusion

For the reasons stated above, the Court will GRANT the parties motions in limine in part and DENY them in part, as follows:

1.  The Defendants' motion in limine, dkt. # 101, will be GRANTED in part RESERVED in part, and DENIED in part:

37

a.  The motion is RESERVED with respect to any attempt by Plaintiff to introduce evidence from investigations and civil complaints against Binghamton Police Officers;

b.  The motion is GRANTED with respect to any evidence of police procedures introduced to prove that Defendant Miller violated Plaintiff's constitutional right to be free of excessive force;

c.  The motion is GRANTED with respect to the introduction of any evidence by Plaintiff in his case-in-chief that any party is indemnified against a verdict;

d.  The motion is GRANTED with respect to the introduction of any evidence or argument regarding a specific amount of damages for Plaintiff for pain and suffering;

e.  The motion is RESERVED with respect to the preclusion of the testimony of Dr. Scott LaPoint until after the Court can conduct a <u>Daubert</u> hearing at trial; and

f.  The motion is DENIED in all other respects.

2.  The Plaintiff's motion in limine to preclude the testimony of Dr. Jeffrey Lyness, dkt. # 102, is hereby DENIED;

3.   The Plaintiff's motion in limine to preclude certain evidence in hospital records, dkt. # 103, is hereby RESERVED until an appropriate time at trial;

4.  The Plaintiff's omnibus motion in limine, dkt. # 104, is hereby GRANTED in part, RESERVED in part, and DENIED in part, as follows:

a.  Plaintiff's motion to preclude Defendants from offering an apology at trial is DENIED as moot, with leave to renew if appropriate at trial;

b.  Plaintiff's motion to preclude testimony about commendations and awards is hereby RESERVED;

c.  Plaintiff's motion to preclude officers from wearing medals on their uniforms at trial is hereby GRANTED.  Officers testifying should wear standard police issue uniforms at trial.  They may not testify in bullet-proof vests or other protective gear, and may not wear any medals or awards.  Officers may wear insignia that reflects their rank within the police force;

d.  Plaintiff's motion to preclude any testimony or evidence on the risks of police work is hereby RESERVED;

e.  Plaintiff's motion to preclude any testimony or evidence on budgetary constraints facing the City of Binghamton and the Binghamton Police Department is hereby RESERVED;

f.  Plaintiff's motion to preclude any testimony, evidence or argument that taxpayers will have to pay for any verdict for the Plaintiff is hereby GRANTED;

g.  Plaintiff's motion preclude any testimony, evidence or argument about his criminal history pursuant to Federal Rule of Evidence 609 is hereby GRANTED;

h.  Plaintiff's motion to preclude any testimony, evidence or

argument regarding his employment or financial status is hereby
RESERVED;

i.  Plaintiff's motion to preclude mention of collateral sources is
hereby GRANTED with leave to renew if Plaintiff puts his financial
status properly in issue;

j.  Plaintiff's motion to preclude Defendants from arguing or
implying that Plaintiff filed his lawsuit for frivolous reasons ("Anyone
can file a lawsuit") is hereby GRANTED as unopposed;

k.  Plaintiff's motion to preclude Defendant's from arguing that
Plaintiff had a purely financial motive for bringing his lawsuit is
hereby RESERVED;

l.  Plaintiff's motion to preclude introduction of the items recovered
from him at the time of the incident is hereby RESERVED;

m.  Plaintiff's motion to preclude evidence, testimony or argument
that he or any other witness has used drugs or alcohol is hereby
RESERVED;

n.  Plaintiff's motion to preclude evidence, testimony or argument
regarding his marital and parental status is hereby GRANTED with
leave to renew;

o.  Plaintiff's motion to preclude evidence, testimony or argument
regarding Plaintiff's failure to mitigate his damages is hereby
DENIED with leave to renew;

p.  Plaintiff's motion preclude evidence of the criminal histories of

Michael Pride and Milargos Gonzales is hereby GRANTED as unopposed with respect to Gonzales and DENIED with respect to Pride;

q.   Plaintiff's motion to preclude evidence of the contraband seized at the scene is hereby RESERVED;

r.  Plaintiff's motion to preclude characterization of the neighborhood in question as a high-crime neighborhood is hereby DENIED;

s.  Plaintiff motion to preclude testimony concerning the legal status of the Victoria Café is hereby GRANTED;

t.  Plaintiff's motion to preclude testimony on the use of force procedures used by the Binghamton Police is hereby DENIED as withdrawn; and

u. Plaintiff's motion to preclude testimony about Internal Affairs investigations of the events in question is hereby RESERVED.

**IT IS SO ORDERED.**

Thomas J. McAvoy
Senior, U.S. District Judge

Dated:   September 16, 2016